Melvin L. Brown

*v.*

Frank Thurman et al., as Members of the Clay
County Election Commission.

(*Nashville,* December Term, 1956)

Opinion filed March 8, 1957.

Karl E. Monroe and Willis E. Spear, Celina, Tony Maxey, Livingston, George B. Haile, Cookeville, for appellant.

G. D. Anderson and P. J. Anderson, Gainesboro, for appellees.

Mr. Justice Tomlinson delivered the opinion of the Court.

Brown, who is the appellant here, was a candidate in the election of August 2, 1956, for the office of School Superintendent of Clay County. On the day preceding the election, he filed the bill in the instant case for the purpose of enjoining the defendant election commissioners, who are appellees here from transmitting to the various voting precincts, and to impound, all the ballots in their hands which were intended to be cast in this election as the votes of absentee voters. The reason assigned for the relief sought is that the chairman of the commission had fraudulently and corruptly "induced

large number of voters to vote an absentee ballot who are neither disabled nor expected to be out of the county on the date of the August 2, 1956 election''; that said fraudulent conduct upon the part of the Commissioner is for the purpose of aiding the candidacy of Mr. Brown's opponent in this election.

Some of the affiants to the twelve affidavits filed in support of the bill stated they had been paid money; some, that they voted for Mr. Brown's opponent. By a preliminary injunction issued under the fiat of the General Sessions Judge of an adjoining county the commissioners were prohibited ''from distributing any of the absentee ballots lodged with them to the different precinct election officers'' and the sheriff was directed to impound all absentee ballots in the hands of these commissioners.

In regular proceedings thereafter had on August 11, after the commissioners had filed their answer denying the allegations of the bill, the Chancellor dissolved the injunction, dismissed the bill and directed that the absentee ballots in the hands of the sheriff be returned to the commissioners. It is from this decree that Mr. Brown appeals.

The substance of the bill in this case is that the election was legal, but that in the hands of the election commissioners is a large number of absentee ballots of individuals who are not entitled to vote by absentee ballot. The effect of the injunction is to eliminate from the election not only these allegedly unlawful ballots, but legal absentee ballots as well.

Such exclusion of legal ballots is unauthorized, unless the Chancery Court is finally to count them. In

that event, the effect of the injunction is to authorize the Chancery Court to determine an election contest through the medium of injunction proceedings. Chancery does not have that authority. *Jeffers v. Botts,* 188 Tenn. 694, 697, 222 S.W.2d 17.

This bill calls upon the Chancery Court to determine the merits of objections to the reception of the votes offered to be cast by individuals. This is an infringement upon authority vested in the precinct judges of the election. Independent of statute, the rule is this:

"Judges of elections are in all cases appointed under the law; they have full power to hear and determine all legal objections to the reception of the vote of any individual offering it; this of necessity will frequently involve difficult investigation of law and of fact." *Rail v. Potts,* 27 Tenn. 225, 228.

The statute regulating absentee voting is carried in the Code commencing at Section 2-1601 in a chapter entitled "Absentee Voting". That chapter vests in the precinct judges of the election the authority and duty of determining the legality of each vote offered to be cast as an absentee ballot at such precinct. This injunction would have the effect of taking away from these judges this statutory duty and vest it in the Chancellor. We are aware of no law or precedent authorizing such a course. Counsel for Mr. Brown are of the opinion that certain remarks made in *Jared v. Fitzgerald,* 183 Tenn. 682, 689, 195 S.W.2d 1, and *Mathis v. Young,* 200 Tenn. 168, 291 S.W.2d 592, 595, are precedents for such procedure.

Aside from the fact that the remarks in question were incidental, and aside from other qualities of dissimilarity, a controlling distinction is in the fact that in *Jared*

*v. Fitzgerald* it was sought to have an election declared unauthorized by law, and *Mathis v. Young* was an election contest.

Although there is an allegation in the bill to the effect that the withholding of the injunction would reap irreparable injury, upon candidate Brown, it seems clear that these forebodings are without merit. Mr. Brown and his representatives were entirely free to appear at the precincts where it was proposed to cast these absentee ballots, and to challenge them as they were offered as votes. As to such of the challenges as were overruled, Mr. Brown had then and there the name of the individual whose vote was challenged on the ground that he was not a legal absentee voter. It would have been very simple, therefore, to have proved his case, assuming its truth, in an election contest to which his opponent was a party.

On the other hand, if the Court should sanction the procedure sought to be followed in this case in behalf of Mr. Brown, it would result in a determination of the rights of Mr. Brown's opponent without that opponent being afforded a hearing. Possibly that fact has been overlooked by counsel. At any rate, such a practice is not permissible.

Finally, it is insisted that it was error to direct the sheriff to return the ballots to the election commissioners, "the sheriff not being before the Court".

The bill prayed that these ballots be impounded "by the sheriff until the determination of this suit". The preliminary fiat so ordered. The sheriff did take possession. Such being the situation, we see no obstacle in the way

of the Court directing its officer to return the ballots which had been erroneously placed in the hands of this officer at the instance of Mr. Brown.

The decree of the Chancellor will be affirmed.