MELVIN L. BROWN

*v.*

MRS. CHARLES VAUGHN.

(*Nashville,* December Term, 1957.)

Opinion filed December 6, 1957.

On Rehearing February 6, 1958.

Toney Maxey, Livingston, George B. Haile, Cookeville, Willis E. Spear and Karl E. Monroe, Celina, Lewis S. Pope, Nashville, for plaintiff in error.

P. J. Anderson and G. D. Anderson, Gainesboro, for defendant in error.

Mr. Justice Burnett delivered the opinion of the Court.

This is an election contest. This case is a sequel to the case of *Brown v. Thurman*, decided by this Court on March 8, 1957, and reported in 201 Tenn. 474, 300 S.W.2d 883. In that case, among other things, this Court determined that a candidate for office, in this particular instance, could not by injunction impound absentee ballots before their transmission to the voting precincts on the theory that large numbers of such ballots were illegal. We determined that the remedy was to appear at the precincts and object to the absentee ballots. The remedy was not by injunctive proceedings.

Melvin L. Brown and Mrs. Charles Vaughn were opposing candidates in the election of August 2, 1956, for the office of Superintendent of Schools for Clay County. On

August 1, 1956, the bill in *Brown v. Thurman*, above referred to, was filed in which the Commissioners were enjoined from receiving and considering absentee ballots. This injunction was not dissolved by the Chancellor until August 11, 1956, after the Commissioners of Election had met and made their official return on the votes that had been cast without considering these absentee ballots. On these votes the Commissioners made their official return and declared Brown elected. The return as made by them gave Brown 1414 votes, as against 1407 votes for Mrs. Vaughn.

As a result of the Chancellor dissolving the injunction wherein the Commissioners had been enjoined from counting the absentee ballots the present suit was filed a few days thereafter by Mrs. Vaughn against Brown in the County Court of Clay County, as an election contest. In this suit she averred that the election was valid but that due to the fact that the Commissioners had not been able to count these absentee ballots that the ballots had not been counted for her and that she received a great majority of these ballots, which if counted would have shown that she was the winner of this contest. In this suit in the County Court she asked to have the Commissioners bring these ballots to court and that the court count the ballots so that a fair election could be had.

After various and sundry motions and pleas were filed to this suit in the County Court (hereinafter to be considered) the County Judge concluded his count of these ballots on November 13, 1956, and found that Mrs. Vaughn had received 239 of these ballots and that Mr. Brown had received 7 of these votes. When these were added to their totals as returned by the Commissioners

Mrs. Vaughn had received a total of 1646 votes in the election to 1441 for Mr. Brown. The County Judge having reached this conclusion he declared Mrs. Vaughn to be duly and regularly elected as County Superintendent of Schools for Clay County and ordered that upon her taking and subscribing to the oath and executing bond, etc., as required by statute that she be installed as County Superintendent of Schools. Mr. Brown prayed an appeal to the Circuit Court where, after various motions were made, the Circuit Judge affirmed the holding of the County Judge because there was no bill of exceptions presented and filed of the hearing in the County Court. It was his conclusion therefore that the judgment of the County Court was correct and must be affirmed. It is from this holding that the present appeal comes.

As said above the trial judge affirmed the holding of the County Judge and dismissed the appeal because there was no bill of exceptions. In this holding the trial judge was following the case of *Griffitts v. Rockford Utility District,* 41 Tenn.App. 653, 298 S.W.2d 33, *certiorari* denied October 5, 1956. The Court of Appeals in that case determined, among other things, that where an appeal in the nature of a writ of error is prosecuted from the County Court to the Circuit Court a bill of exceptions is required. We think the decision sound and expressly approve such holding in cases of the kind now before us.

The decree of the County Court which is brought up with the record in this case shows that the Commissioners of election were before the County Judge and by the force of a subpoena *duces tecum* they had brought with them these absentee ballots before any of them had been opened. In other words they were brought by the Commis-

sioners to the County Judge in sealed envelopes. The decree also shows that these envelopes were then opened and the ballots inspected by the County Judge and the signatures of the voters on the ballots and those on the registration records of the county were compared and found to be those of legal and qualified voters. Tellers to keep the tally for the Court were appointed by the Court and after this tally the result as above indicated was determined by the County Judge.

This very finding indicates within itself how essential it is to have had a bill of exceptions made up because it was from this evidence and these ballots alone that the County Judge determined that defendant in error was elected as opposed to Brown who had been declared the nominee when all the ballots had not been counted by reason of an injunctive process hereinabove referred to.

There is no jury in a contested election case. *Shields v. McMahan,* 112 Tenn. 1, 81 S.W. 597. This is a contested election case and is a suit to recover an office, not to remove a usurper, and such a suit is a civil suit and is brought to enforce a civil right in a controversy between contestant and the contestee. This suit is filed to recover an office as distinguished from an action to annul an election. With these observations in mind it is clear that the reasoning of the Court of Appeals in *Griffitts v. Rockford Utility District, supra,* is sound reasoning under an appeal from the County Court to the Circuit Court.

The next question for our consideration which is probably raised in the pleadings is whether or not the County Court had any jurisdiction or whether the original jurisdiction of an action of the kind here was in the Circuit Court.

■ ■ It is elementary in this State that the Court having the power to induct an officer into office has jurisdiction to determine the validity of his election. *Wolfenbarger v. Election Commission,* 166 Tenn. 548, 64 S.W.2d 12. Where there is no provision for the induction of the officer into office and no statute specifying as to what the court in an election contest involving such an officer is then the Circuit Court has original jurisdiction to try such a contest. *Johnson v. White,* 171 Tenn. 536, 106 S.W.2d 222.

■ Code Section 49-222, T.C.A., provides for the qualifications, etc., of the County Superintendent of Schools. Where there is no specific private statutory method for the election of a County Superintendent he is elected by the County Courts of the several counties of the State. The qualifications of the Superintendents are given and what he shall do when elected. Clearly this qualification applies to a Superintendent elected by the County Court or one elected by special statute (as in the instant case) by the people. This provision is:

"The person so elected shall possess all qualifications therefor now required by law and upon his election, shall execute bond in an amount to be fixed by the county judge or chairman and likewise take an oath to faithfully discharge the duties of his office."

Clearly this requires the county superintendent to execute his bond according to the general statutes to be fixed by the County Judge and to take an oath of office to discharge his duties. Thus it is that the County Court is the court having power to induct this county superintendent into office. This being true the jurisdiction to determine

the validity of his election is in the County Court. See *Wolfenbarger v. Election Commission, supra.* This provision was not embodied in the Code at the time *Johnson v. White, supra,* came before the Court.

By Chapter 606 of the Private Acts of 1923 provision was made that the County Superintendent as it so happens at that time under the population standard applied to Clay County should be elected by the people at the regular August elections. There was no provision in this Section of the Act where an election contest involving this office should be held. The Act did provide "that the certificate of qualification shall be filed with the County Judge or Chairman of the County Court * * *". This Act was amended by Chapter 324 of the Private Acts of 1943. This amendment though in no wise affected anything pertaining to the County Superintendent of Clay County now before us. Thus we see that by the Private Act making the election of the County Superintendent of Clay County a popular election by the people the Act provides that he shall make his qualifications before the County Judge. The general law (49-222, T.C.A.) above referred to as to where the County Superintendent shall qualify, clearly applies to the Superintendent of Schools of Clay County. These facts being true we are satisfied that this election contest should have been commenced or originated in the County Court of Clay County.

■■ The question is raised by demurrer and motion in the County Court and again attempted to be raised in the Circuit Court that this was not an election contest. An election contest is a controversy between two private individuals as to the right to exercise the functions and enjoy the emoluments of an office. *Maloney v. Collier,* 112

Tenn. 78, 83 S.W. 667. We do not doubt that this is an election contest. The action seeks to go behind the certificate of the returning officials and for them to produce ballots which they have sealed up, and were not allowed to count, because of an order of the Court, and to honestly count these ballots. It is said in the pleading that when this is done the contestant will be declared one entitled to the office as against the contestee who was declared the one elected before these ballots were counted. We referred at length to the decree of the County Court above which shows that the election commissioners were before the Court and had brought these ballots by an order of the Court to the Court and there the ballots had been exhibited, evidence heard and the signatures compared as to whether or not they were a true vote of the people casting them. •

These election commissioners there had an opportunity, and we must assume, in the absence of evidence to the contrary, that they did examine these ballots and if there were any that were not legitimate and fair this fact would have been shown to the Court and the Court would have thrown them out. The presumption is from this decree that the Court heard this proof and concluded that these were legitimate, honest votes and an expression of the people. This fact the commissioners had not been allowed to do by reason of a previous injunctive order of the Chancery Court. The commissioners obviously after having made their final return could not do anything as long as this suit of *Brown v. Thurman, supra,* was pending. What could the commissioners do under the circumstances in this case after they had done their official duty in counting the votes that they did count where they

declared Brown the elected one. The commissioners had no authority or right after having done this, in view of the fact that they could not examine these ballots, to say that they had erred. The only place that this could be done was in the Court where all parties could examine these ballots which clearly had been cast when they were deposited with the commissioners. This having been done this then clearly is an election contest and results in a valid election carrying out the express wishes of the people.

The petition among other things prayed that:

"Said returns should be impeached, and/or, amended or corrected by reason of the following * * *."

Then of course follows the allegation of facts about these ballots being impounded and that if they were properly counted that Mrs. Vaughn would be elected. To our minds this clearly presents (as said above) an election contest.

 It was the duty of the Circuit Court, as it is our duty, to consider any errors or error that was apparent on the face of the technical record. Under such a situation it is not necessary to have a motion for a new trial or a bill of exceptions. The Appellate Courts consider any of these errors that might appear on the face of this technical record because such errors do not directly affect the correctness of the verdict and would not be cured by setting it aside. *Memphis St. R. Co. v. Johnson,* 114 Tenn. 632, 88 S.W. 169, 170; *Nashville, C. & St. L. R. Co. v. Smith,* 147 Tenn. 453, 249 S.W. 377; *Morristown, Mayor and Aldermen of, v. Love,* 160 Tenn. 177, 22 S.W.2d 769. When the error though relates to questions that the verdict is not supported by the evidence or there

is misconduct, that the court ruled wrong on this or that or the other thing that is not in the technical record, then it is necessary to have a bill of exceptions to show these things. This being true it is necessary for us to look to this technical record, that is, the various pleadings including the demurrer and the motions and see whether or not there is any reversible error in the action of the trial court on this technical record.

It is said in argument that the County Court refused to hear some 200 or more witnesses that were there in behalf of Mr. Brown and that these were offered but refused. It is likewise said that the County Judge refused to put it in the order that these witnesses had been there and that he had refused hearing and various and sundry other things are said in the argument that were refused below which if they had been made a part of the bill of exceptions could have been considered by us. These things though not appearing in the bill of exceptions we have no right to consider them. The object of the bill of exceptions is to put all of these matters, which are complained of in argument here, so that in the first instance the Circuit Judge and then the proper Appellate Court when appealed could see if there were errors of law in granting or not granting a new trial. The notes of counsel or parties, depositions, or other writings or testimony of witnesses taken by word of mouth or anything of that kind are not here and cannot be considered by us unless they are a part of the bill of exceptions. *Spurlock v. Fulks,* 31 Tenn. 289; *Hardwick v. State,* 74 Tenn. 229; *Turner v. State,* 187 Tenn. 309, 213 S.W.2d 281; *Hammers v. Prudential Life Ins. Co.,* 188 Tenn. 6, 216 S.W.2d 703, and many others. Likewise

see excellent discussion of this whole question in Chapter 10 of Gilreath's History Of A Lawsuit, 7th Edition.

The decree and judgment of the County Judge shows that the plaintiff in error abandoned in the Circuit Court his plea in abatement, pleas of estoppel, pleas of former suit pending and objections to five days' notice. This being done the Circuit Judge struck those pleas from the record. Be that as it may they are more or less covered one way or another by the motion here which had its basis as a plea in the County Court that that Court was without jurisdiction. We have acted on that question hereinabove and it is not necessary that we say more about it.

There were eight separate motions filed to expunge or strike from the petition certain portions of the petition. These motions are based on the fact that things that are there moved to be expunged or stricken from it are argumentative and have no part in an election contest. We do not think it is here necessary to take up each of these motions and consider them separately because as we see the matter the petition fairly and frankly stated what the cause of action of Mrs. Vaughn was and did state an election contest. We see no error in the trial judge's overruling and disallowing any of these eight separate motions.

There was a demurrer filed which was argued before the Circuit Judge, as it was before the Judge of the County Court. In both instances it was overruled. This demurrer consists of seven grounds. Each of these grounds is an argument that the suit should not be maintained because of various and sundry questions hereto-

fore considered in this opinion and held against the demurrer. The first of these grounds argues that the remedy sought by this petition is unknown to the law. The second argues that the petition merely seeks a second or supplemental election. The third is that these ballots which have been withheld by order of the Court have never been voted. The fourth is that the Commissioners of Election were not before the Court; the fifth is that the petition contradicts and negatives itself; the sixth is that the petition does not undertake or show that the contestant has any title to the office and the seventh is that the petition when construed as a whole certainly does not inform the Court of how the absentee ballots would turn out, whether for the contestant or the other party.

We, after carefully considering all these grounds of the demurrer, are satisfied that the lower court was correct in overruling this demurrer. Our reasons for this conclusion are substantially set out heretofore in this opinion. We will not reiterate them.

Various lengthy written motions are in the record made on behalf of plaintiff in error, Brown, that the Circuit Court grant him a trial *de novo*. The trial court after hearing these various motions and the reasons therefor properly denied each of those motions. The parties could not consent to jurisdiction. The law provides that these hearings shall be in a certain way. Presumably the parties know the law or should know the law and the rules of how this should be done. If they do not or if an error is made on their behalf in presenting their case there is nothing that this Court has the power or the right to do about it.

After considering this record, regardless of any errors one way or the other, we are satisfied that justice has been done. The judgment therefore of the Circuit Judge must be affirmed.

## On Petition to Rehear

We have had filed with us a very forceful re-argument of one proposition heretofore submitted and passed on by us in this case. The petition to rehear concedes this fact. Beginning at pages 446, 447, of 310 S.W.2d, we discussed the questions here raised by this petition and to our satisfaction, answered the same.

The present petition and re-argument is made by one of the most eminent lawyers in the State and one that we have the very greatest respect for. We must respectfully disagree with his opinion as stated in this' petition to rehear for the reasons set forth in our original opinion in the pages above referred to.

It is now again argued that the portion of Section 49-222, T.C.A., which we quoted, is not applicable to a superintendent of public instruction when elected by the people. One of the reasons assigned for this is the following Section of the Code, that is, Section 49-223, T.C.A., which has to do with the County Superintendent elected by popular vote. This Section merely provides that when he is elected by the popular vote he shall serve for four years in the term beginning at so and so. The Section has absolutely nothing to do with the qualifications of the Superintendent, where he shall qualify and how he shall make these qualifications known.

These two Sections of the Code (49-222, and 49-223, T.C.A.) are Chapter 36 of the Public Acts of 1943. The caption to that Act is:

"An Act to provide for the election, qualifications and term of office of County Superintendents of Public Instruction."

They were carried in the old Williams' Code as sec. 2320b, there was no separation—they were not two sections of the Code. Thus when we read them together and find one paragraph which carries into effect the way that a County Superintendent is elected, that is by the County Court and then specifying his qualifications, that is that he shall possess "all qualifications therefore now required by law and upon his election", shall do thus and so as quoted in our original opinion. Then the next paragraph in this Act is what is now relied on here by the petition to rehear, 49-223, T.C.A., which says that in all cases where the County Superintendent is elected by popular vote his term shall be, so and so. Clearly this Section and this section of the original Act does not change or alter the basic principles in the preceding Section as to qualifications and as to how the Superintendent shall qualify. We think it fundamental law that this general law applying to all superintendents as to how they shall qualify, and, where is applicable even though they are elected by the County Court or by the people and for this reason we must strictly adhere to our reasoning as set forth in the original opinion. We feel that if counsel re-reads *Wolfenbarger v. Election Commission,* 166 Tenn. 548, 64 S.W.2d 12, cited in our original opinion, he must agree with us that the County Court is the proper tribunal in which this suit is to be instituted.

It is fundamental that where a Private Act calls for different qualifications for a Superintendent of Public Education to that as required by the general law that such an Act is unconstitutional. *Gallien v. Miller,* 170 Tenn. 93, 92 S.W.2d 403. This, the election of the County Superintendent by the County Court has been fundamental in our law since the establishment of the common schools in this State. This provision was carried in the old Shannon's Code as Section 1410, and originated with Chapter 25 of the Acts of 1873, where it was provided that the County Superintendent for each county shall be elected by the County Court, etc.

Counties soon began to want to vote on their County Superintendents themselves and not leave it to their elected representatives in the County Court and these various Private Acts were passed in various counties of the State to elect one by a vote of the people. Clearly this was right and comes clearly within Article 11, Section 17 of our Constitution which provides:

"No County office created by the Legislature shall be filled otherwise than by the people or the County Court."

Clearly a County Superintendent elected by the County Court or by the people comes within this constitutional provision.

Sections 49-220 and 49-1214, T.C.A., set forth the qualifications necessary for the office of County Superintendent. Section 49-222, T.C.A., sets forth what is necessary for him to do generally in all counties of the State whether elected by the County Court or by the people, those things as set forth in our original opinion, that is,

that he shall execute bond and take an oath to faithfully discharge his duties before the County Judge. Thus as we see it under the authority of *Wolfenbarger v. Election Commission, supra,* this suit was properly instituted in the County Court.

We have against very carefully, by reason of our respect for counsel who filed this petition and with an abundance of precaution to try to be right, and we know that we are all human and all humans are subject to mistake, made a thorough restudy of the matter and after doing so we are more constrained than ever to hold to the opinion as expressed originally herein. It is for the reasons above expressed that the petition to rehear must be overruled.