NASHVILLE, CHATTANOOGA & ST. LOUIS RAILWAY COM-
PANY *et al. v.* J. T. PRICE *et ux.*

(*Nashville.* December Term, 1911.)

1. **FINDINGS OF FACT. Preparation by counsel is improper,
when requested to be reduced to writing.**

Under the statute (section 4684 of Shannon's Code) requiring
circuit judges, upon the request of either party, to reduce their
findings of fact to writing, it is improper to permit or require
counsel for the successful party to prepare such written find-
ings of fact, because the preparation thereof is a high judicial
function that cannot properly be intrusted to counsel naturally
so biased with respect to their cases as makes it almost im-
possible for them to present, fairly and fully, all the facts
as the judge would do. (*Post, pp.* 648-650.)

Code cited and construed: Sec. 4684 (S.); sec. 3673 (M. & V.);
sec. 2959 (T. & S. and 1858).

Case cited and approved: Hinton v. Insurance Co., 110 Tenn., 130.

2. **SAME. Reduced to writing by counsel will be disregarded;
and, if exception was taken and error assigned, case will be
reversed.**

Such findings of fact so prepared by counsel will not be treated
by the supreme court as the statutory findings of fact, and con-
stitute grounds of reversal, where exception was properly ta-
ken; but where no error is assigned for such action, the
record will be examined as if no request had been made for
such findings. (*Post, pp.* 648-650.)

3. **COMMON CARRIERS. Sleeping car company is liable in dam-
ages for expulsion due to its mistake in routing ticket.**

A sleeping car company is liable in damages for its tort in the
expulsion of a passenger in breach of its contract, due to its

---

Railroad v. Price.

---

delivering to him a sleeping car ticket over a route between two points other than that for which it was sought to be purchased and other than that called for by his railroad ticket, where such railroad ticket was then in the possession of the sleeping car company's agent, and subject to inspection, as the guide for the route of the sleeping car ticket by its agent who, in this case, was the railroad company issuing the railroad ticket.   (*Post, pp.* 650-655.)

Cases cited and approved: O'Rourke v. Railroad, 103 Tenn., 124; Railroad v. Graves, 110 Tenn., 232; Railroad v. Pauson, 70 Fed., 585, 17 C. C. A., 287; Pullman Palace Car Co. v. King, 99 Fed., 380, 39 C. C. A., 573; Railroad v. Reynolds, 55 Ohio St., 370; Gorman v. Railroad, 97 Cal., 1; Banking Co. v. Roberts, 91 Ga., 513; Railroad v. Conrad, 4 Ind. App., 83.

4. SAME. Railroad company is liable in damages for expulsion from sleeping car, due to its mistake as agent in routing sleeping car ticket.

A railroad company is liable in damages for the expulsion of a passenger from a sleeping car, due to its mistake while acting as agent for the sleeping car company, and while operating, in connection with other railroads, a line of through sleepers between two points, in selling him a sleeping car ticket good between those points, but not over the route covered by his railroad ticket. The railroad company's such act as agent was one of misfeasance and negligence rendering it as agent, as well as the principal, liable.   (*Post, pp.* 655-657.)

Case cited and approved:   Drake v. Hagan, 108 Tenn., 265.

---

FROM DAVIDSON.

---

Appeal from the Circuit Court of Davidson County to the Court of Civil Appeals, and by *certiorari* from the

Court of Civil Appeals to the Supreme Court.—Thos. E. Matthews, Judge.

Claude Waller and Frank Slemons, for plaintiff in error.

Walter Stokes, for defendants in error.

—————

Mr. Justice Green delivered the opinion of the Court.

This suit was brought by Z. T. Price and wife, Amelia Price, against the Nashville, Chattanooga & St. Louis Railway Company and the Pullman Palace Car Company, to recover damages for the expulsion of Mrs. Price from a sleeping car at Tifton, Ga., in September, 1907.

The suit was brought before a magistrate. There was a judgment there for $500 against the railway company, which was affirmed by the circuit court and by the court of civil appeals. The suit was dismissed in the circuit court as to the Pullman Palace Car Company by consent of counsel for the plaintiffs below. A writ of *certiorari* was granted by this court to review the action of the court of civil appeals, and the case has been heard here.

Upon the trial of this case in the circuit court, counsel for the railway company requested the judge to reduce his findings to writing. The judge replied that it was a rule of his court, when requests of this character were made, to require the attorney for the successful party to

prepare the written finding of facts. In accordance with this demand of the trial judge, there was a written finding of facts prepared by the attorney for plaintiffs below. It was signed by the judge and is put into the record as his finding.

This practice is improper. It is no compliance with the statute (Shannon's Code, section 4684), which requires circuit judges to make these findings of fact in writing upon the request of either party to the suit. Such findings are accorded the highest dignity in the appellate courts of Tennessee. They are looked to as embodying a fair statement of all the essential facts in the record, and this court has said, in *Hinton* v. *Insurance Co.*, 110 Tenn., 130, 72 S. W., 118, that it will not go outside this finding and examine the record at large for the facts of the case, but will only look to the record to see if the findings of fact are supported by any evidence. There are other cases, familiar to the profession, which further illustrate the weight and force that are here given to these findings of the trial judge.

The preparation of such a finding, being a matter of so much importance and a high judicial function, cannot properly be intrusted to counsel. Counsel have a natural bias with respect to cases in which they are engaged that makes it well-nigh impossible for them to fairly and fully present all the facts as the judge would do. We are of opinion, therefore, that his honor was in error in delegating the preparation of the duty imposed upon him by the statute to counsel in the case, and that the finding in this record cannot be looked to by us and

treated as a statutory finding of facts by the trial judge. Had exception been taken, the case would have been reversed on this account.

However, no error being assigned to this action of the trial judge, we have examined the record, as if no special finding had been requested, to see if there is evidence to sustain the judgment below. There is really no controversy with reference to the determinative facts of this case.

In the spring of 1907, Mrs. Amelia Price, who was a delicate woman, troubled with asthma and in the habit of spending her winters in the South, purchased, in Jacksonville, Fla., a round-trip ticket to Nashville and return. This ticket was procured from the agent of the Georgia Southern & Florida Railroad Company. It read over that raod from Jacksonville to Macon, over the Central of Georgia from Macon to Atlanta, and over the lines of the plaintiff in error from Atlanta to Nashville.

In conformity with a stipulation in this ticket, upon her arrival in Nashville, Mrs. Price deposited the same with the agent of plaintiff in error at the Union station in Nashville, pending her return to Jacksonville, paying a small fee in this connection.

When she was about ready to go back to Florida, in September, 1907, she went to the Union station at Nashville with the intention of buying sleeping car accommodations from Nashville to Jacksonville. She was there told that sleeping car space was sold at the Maxwell House, and the agent at the Union station gave her a slip, or routing, as it was called, purporting to show the

character of her railroad transportation, and she took this slip to the agent of the plaintiff in error in the Maxwell House, where the city office of the plaintiff in error was maintained. From the latter agent she purchased a berth in a sleeper running through from Nashville to Jacksonville; it being, according to the Pullman check given her, "Lower Bérth No. 8, Car No. 1, Nashville to Jacksonville."

On the day after procuring her sleeping car ticket, she returned to the Union station and procured her railroad ticket, and embarked in a sleeper on a train leaving Nashville at 9:30 a. m., known as the "Dixie Flyer." Her tickets were examined by the gateman and others prior to her boarding this sleeper and this train, and she was assigned to the berth called for by her Pullman check.

There is some evidence indicating that she was changed from one sleeper to another later in the same day, probably after she had passed Atlanta and gone off the lines of plaintiff in error. This change is not a material circumstance in the case, if it happened, as there was no car on the Dixie Flyer going from Nashville to Jacksonville over the route indicated by her ticket. At any rate, she appears to have retired that night without interruption, but about 1 o'clock she was awakened, and, upon looking out, saw the Pullman conductor and the railroad conductor by the side of her berth. They informed her that her ticket was not good over the line traversed by the sleeper in which she was located, further than Tifton. They told her that if she

wished to remain in this sleeper, and go on to Jacksonville, it would be necessary for her to pay four dollars and fifty cents additional fare; that, if she was not willing to pay this additional fare, she would have to get off at Tifton, which place they would reach in about one hour. She decided to get off at Tifton, and did so, remaining for an hour or so, when she caught another train for Jacksonville, and reached there somewhat later than she would have done, had she continued on the train from which she was removed. She was, as said before, a delicate woman, and there is testimony indicating that the exposure and excitement incident to her being removed from the train at Tifton brought on an attack of asthma, which caused her considerable inconvenience and suffering.

The record shows that during the year of 1907, there was a line of through sleepers operating between Nashville and Jacksonville, but that the route of these sleepers was as follows:

From Nashville to Atlanta over the Nashville, Chattanooga & St. Louis Railway.

From Atlanta to Macon over the Central of Georgia Railroad.

From Macon to Tifton over the Georgia Southern & Florida Railroad.

From Tifton to Jacksonville over the Atlantic Coast Line.

The route of these sleepers, it will be seen, was the same as the route of Mrs. Price's ticket, up to Tifton, Ga., but from Tifton to Jacksonville the sleeper went

over the Atlantic Coast Line, while her ticket read over the Georgia Southern & Florida Railroad. As previously observed, there was no sleeper running all the way from Nashville to Jacksonville over the route corresponding with Mrs. Price's ticket at this time.

From the schedules of these trains, as proven in the record, and from Mrs. Price's testimony that she was awakened about one hour before she left the train at Tifton, it is manifest that she was aroused and removed from the train while on the Georgia Southern & Florida Railroad.

It is clear, from an examination of the record, that the Nashville, Chattanooga & St. Louis Railway was the agent of the Pullman Palace Car Company for the sale of sleeping car space in sleepers going over its lines. Such is the testimony of the superintendent of the Pullman Company at Nashville, and it is borne out by the testimony of the city ticket agent of the plaintiff in error.

Upon the facts stated, we think the Pullman Company was liable to Mrs. Price for her expulsion from this car. It contracted with her that she might occupy lower berth No. 8, in car No. 1, from Nashville to Jacksonville. She was forced to leave the car before reaching Jacksonville, by the sleeping car company, or by those for whose acts it was responsible. The sale to her of this through transportation by the Pullman Company, with the railroad ticket in the possession of its agent and subject to its inspection, was a representation to the passenger that the sleeper in which she was sold a berth

would go by the same lines that the railroad ticket called for.

Mr. Hutchinson says:

"But if, after inspection of a passenger's railroad ticket, an agent of the sleeping car company sells the passenger a ticket for a berth on the sleeing car, it is a representation to the passenger that the sleeping car will go by the same line of railroad that the passenger's ticket calls for. Such representation is in the nature of a warranty, and the contract may therefore be treated as embodying it as a part of its terms. It is plain that this contract is broken if the passenger is compelled by the sleeping car company, or by those for whose acts it is responsible, to leave the car at any time before reaching his destination because his railroad ticket calls for a different line than that over which the sleeping car passes, and in that event he is entitled to recover for the breach of contract, as he could do if he had been wrongfully ejected by a common carrier or by an innkeeper.

"For such ejectment, the sleeping car company is liable, not only for the direct, but also for the consequental, damages which should have been anticipated as the natural and probable result of its breach of contract, subject to the limitation that the damages recovered could not be enhanced by the negligent or willful conduct of the passenger." Hutchinson on Carriers, section 1138.

This passage is founded on *Pullman Palace Car Company* v. *King,* 99 Fed., 380, 39 C. C. A., 573, from the circuit court of appeals, second circuit, which case is

well reasoned, and we think reaches a sound conclusion.

.The Pullman Company was therefore liable in this case to Mrs. Price for a breach of contract, and we think it was liable in tort also.

The effect of our own cases is that an action in tort lies under such circumstances. *O'Rourke* v. *Street Railway Co.,* 103 Tenn., 124, 52 S. W., 872, 46 L. R. A., 614, 76 Am. St. Rep., 639; *Railroad* v. *Graves,* 110 Tenn., 232, 75 S. W., 729, 100 Am. St. Rep., 803. See, also, *Railway Co.* v. *Reynolds,* 55 Ohio St., 370, 45 N. E., 712, 60 Am. St. Rep., 706; *Railway Co.* v. *Pauson,* 70 Fed., 585, 17 C. C. A., 287, 30 L. R. A., 730; *Gorman* v. *Railway Co.,* 97 Cal., 1, 31 Pac., 1112, 33 Am. St. Rep., 157; *Banking Co.* v. *Roberts,* 91 Ga., 513, 18 S. E., 315.

The expulsion of Mrs. Price was the natural and proximate result of the wrongful act of the agent of the sleeping car company in selling her through transportation in this sleeper, which it knew did not go over the route shown by her railroad ticket. 6 Cyc., 558; *Railroad Co.* v. *Conrad,* 4 Ind. App., 83, 30 N. E., 406. This wrongful act was the occasion of her expulsion, and for such wrongful act an action in tort can be maintained.

As to the Pullman Palace Car Company, this suit has been dismissed, and it is not before us. The question remains, however, as to the liability of the railway company. The railway company, while acting as an agent of the Pullman Company, and while operating in connection with other roads, a line of through sleepers from Nashville to Jacksonville, with this intending passen-

ger's ticket in its possession, and before it for inspection, sold to her through accommodation, lower berth No. 8, car No. 1, Nashville to Jacksonville, when it knew there was no sleeper from Nashville to Jacksonville over the lines indicated by her railroad ticket. As a result, the lady was expelled from the sleeper at 2 a. m., just where it might have been foreseen she would be expelled—at the point where the route of her ticket and the route of the sleeper diverged.

May a railroad company, familiar with the route of sleepers, which it operates to attract custom, undertaking either for itself, or as an agent for the sleeping car company, to furnish passengers with through accomdodations to distant points, be allowed to escape liability when guilty of negligence such as the foregoing? May its passengers be thus inconvenienced, discommoded, and damaged without redress? We think not, for several reasons.

Under the proof adduced in the case, it is sufficient to say that the railway company was the agent of the Pullman Company, with reference to the sale of sleeping car accommodations. It was clearly such an agent, upon this record. Its acts in this matter, therefore, were those of misfeasance and negligence. for which the agent, as well as the principal, is liable. *Drake* v. *Hagan,* 108 Tenn., 265, 67 S. W., 470, and cases cited; Clark & Skyles on Agency, vol. 2, section 595; 31 Cyc., 1561, note 57.

Upon this ground there can be no doubt of the liability of the plaintiff in error herein.

Railroad v. Price.

In the view of the case which we have taken, it is manifest that the evidence fully supports the judgment below, and that there is no variance between the averments of the warrant and the proof. Assignments of error to this effect are therefore overruled.

The judgment of the court of civil appeals is affirmed.