CHARLES M. WEINSTEIN *et al. v.* L. BARRASSO.

*(Jackson.* April Term, 1918.)

1. **APPEAL AND ERROR.** Review. Record. Finding of court without request.

There being no request therefor by either party, a written opinion or finding of facts filed by the trial judge is no part of the record, and the judgment must be treated as a general verdict under a correct charge and affirmed if it may be rested on any theory supported by material evidence. (*Post, p.* 595.)

Cases cited and approved: Brooks v. Paper Co., 94 Tenn., 701; Stephens v. Mason, 99 Tenn., 512.

2. **LANDLORD AND TENANT.** Negligent use of rooms by other tenants. Eviction.

Where a landlord surrenders to tenants possession of upstairs rooms in which are installed proper closet fixtures, and such tenants by negligent use cause overflows of water, to the injury of tenants below, the landlord not being responsible therefor, such acts are not an eviction. (*Post, p.* 595.)

3. **LANDLORD AND TENANT.** Action for rents. Defenses. Eviction.

A tenant cannot claim a constructive eviction before surrendering the premises, and such eviction is no defense to an action for rents, then overdue, although payable in advance. (*Post, p.* 597.)

Cases cited and approved: Kuschinsky v. Flanigan, 170 Mich., 245; Edmison v. Lowry, 3 S. D., 77.

Cases cited and distinguished: Johnson v. Oppenheim, 12 Abb. Prac. N. S. (N. Y.), 449; Wilson v. Smith, 13 Tenn., 379.

139 Tenn.—38.

FROM SHELBY.

Appeal from the Circuit Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—D. W. DeHaven, Special Judge.

G. J. McSpadden, for plaintiffs in error.

Mossterole & Glankler, for defendant in error.

Mr. Justice Green delivered the opinion of the Court.

This suit was brought to recover on a rent note for $125. There was a judgment in favor of plaintiff below, which was affirmed by the court of civil appeals, and the case is before us on petition for *certiorari*.

The Weinsteins rented a storehouse from Barrasso, located on Main street in Memphis. They were merchants and pawnbrokers. The upper floors of this building were rented by Barrasso to other parties for a rooming house.

The lease of the Weinsteins was for three years, and terminated August 31, 1916. They moved out on September 30, 1915. This suit is to recover rent for the month of September, 1915, only.

The plaintiffs in error defend on the ground that there was a constructive eviction, or a partial eviction.

It seems that there was a water-closet on the second floor of this building immediately over the rear of the store rented to them, and by reason of overflows from this place and the leaking of foul water into their store, they insist: (1) That a nuisance accrued which in law amounted to a constructive eviction; and (2) that they were actually dispossessed of a part of these premises.

There was a written opinion or finding of facts filed by the trial judge. There was, however, no request for such a finding by either party below. Under our cases, therefore, this finding of facts is no part of the record, and the judgment rendered must be treated as a general verdict under a correct charge and affirmed, if it may be rested on any theory, supported by material evidence. *Brooks* v. *Paper Co.*, 94 Tenn., 701, 31 S. W., 160; *Stephens* v. *Mason*, 99 Tenn., 512, 42 S. W., 143.

The trial judge placed his decision on the ground that there could be no constructive eviction without a surrender of the premises. 16 R. C. L., p. 949; 24 Cyc., 1130. He concluded that since the plaintiffs in error remained in possession and occupancy of the premises during the month of September, 1915, and until October 1st, they could not claim an eviction prior to that time. He did not discuss the question of partial eviction.

There was evidence below tending to show that the fixtures in this closet, while old, would have caused no trouble if they had been properly used; that the over-

flow was occasioned by the negligence of the patrons of the rooming house in throwing large quantities of paper into the toilet; that when this paper would be removed, the overflow would cease.

The court of appeals thought that the trouble was created by the misfeasance of the tenants above; that the fixtures furnished by the landlord to the tenant above were not dangerous or unsuitable *per se;* and that the injury to plaintiffs in error was caused by the negligent acts of other tenants for which the landlord was not responsible.

As above seen, there is evidence to sustain this theory. On such a theory the conclusion of the court of civil appeals was sound and is supported by authorities cited by that court.

"The landlord is not liable for injury to a tenant in a building caused by the improper use of appliances within the exclusive control of a tenant in another part of the building; as when water fixtures on the premises of one tenant are improperly used by the latter so as to cause a flooding of the premises of another tenant. Nor is the landlord liable when the injury results from defects in appliances on premises leased by him to another when these defects arise after the lease without the landlord's fault, though he is liable if the damage is caused by defects existing at the time of such lease." Tiffany on Landlord and Tenant, 645.

"If the landlord provides pipes and other plumbing work of good quality and surrenders possession, the tenant only is responsible for the mode in which these

things are used and for any overflow caused either by neglect to turn off the water or by such misuse of the works as deprives them of the power to stop the flow of water." Sherman & Redfield on Neg. section 723.

On this theory of the case there was no eviction at all, for eviction must be by an act of the landlord or by an act of some other person for which he is answerable. Trespasses or other acts of third persons, unless committed "under the direction of, or at the instance of, or with the consent of the lessor" do not amount to an eviction. 24 Cyc., 1132; 16 R. C. L., 685.

It is insisted, however, by counsel for plaintiffs in error that this overflow was occasioned by defective plumbing in the upstairs closet, and that the landlord by letting for use such premises in such condition, known to him, became immediately responsible for the results.

It is said that the filthy water and the stench actually dispossessed plaintiff in error of part of the premises rented by them, and authorities are cited which hold that partial eviction will relieve a tenant of liability to pay rent upon any portion of the premises during the continuance of the eviction. *Kuschinsky* v. *Flanigan,* 170 Mich., 245, 136 N. W., 362, 41 L. R. A. (N. S.), 430, Ann. Cas., 1914A, 1228; *Edmison* v. *Lowry,* 3 S. D., 77, 52 N. W., 583, 17 L. R. A., 275, 44 Am. St. Rep., 774, and authorities collected in notes under these two cases. This rule has been recognized in this State in *Olmstead* v. *Tennessee Fixture & Showcase Co.,* 1 Tenn. Ch. App., 653.

In the cases referred to the tenants were physically dispossessed of a part of their premises. They are cases in which the landlord had entered and placed upon the demised premises building material, structures, or other things which actually dispossessed the tenant of portions of the leasehold estate.

In the case before us there was no actual dispossession. These overflows occurred several times. Plaintiffs in error had to move their goods from the rear of their store to escape the water, the walls were discolored, and the odor was offensive. All the while, however, plaintiffs in error might have occupied their entire premises, although such occupancy of the rear part of the store would have been attended with much inconvenience and subjected their goods to damage. There seems to be no doubt upon their testimony but that plaintiffs in error were seriously damaged, and for such damage they have a proper action. They were not, however, actually evicted from these premises or any portion thereof.

Summarizing the authorities in that State, one of the New York courts has said:

There are a class of cases "where the landlord commits an act or acts of trespass, which interfere, more or less, with the beneficial enjoyment of the premises, but which leaves the demised premises intact, and do not deprive the tenant of any part of them, so that, though he may be injured, he is not thereby dispossessed. Here the rule is, inasmuch as the wrongful act of the landlord stops short of depriving the tenant

of any portion of the premises, that such trespass is no defense against the liability for rent, and the tenant's sole remedy therefor is an action for damages against the wrongdoer." *Johnson* v. *Oppenheim,* 12 Abb. Prac. N. S. (N. Y.), 449.

See, also, note 17 L. R. A., 276.

"A mere trespass by the landlord upon the demised premises, not intended by him as a permanent amotion or expulsion of the tenant, so as to deprive him of the possession and enjoyment of the premises, may enable the tenant to recover damages, but will not amount to an eviction." Note, 7 Ann Cas., 600.

This court has spoken to the same effect in a suit where a trespass by the landlord was urged as a defense to his claim for rent, saying:

"The right of the plaintiff to recover, however, is supposed to be totally subverted by his entry upon the premises. Such interference, unless the tenant be wholly evicted and expelled from the possession, is not a discharge from payment of the stipulated compensation, but makes the enterer upon his possession a trespasser liable to make satisfaction for the damages in the appropriate action." *Wilson* v. *Smith,* 5 Yerg. (13 Tenn.), 379, 399.

If the landlord's responsibility for this toilet be conceded, then we think, under the circumstances of this case, plaintiffs in error were entitled to claim a constructive eviction as soon as they surrendered the premises. They did not leave, however, until Sep-

tember 30, 1915. This suit is for rent for the month of September, 1915, which was due September 1, 1915.

As seen before, the premises have to be abandoned by the tenant before he can claim a constructive eviction. 16 R. C. L., 949; 24 Cyc., 1130.

If a constructive eviction occurred in this case, it was on September 30, 1915, when plaintiffs in error moved. The September rent was then overdue thirty days.

"As a general rule, to constitute an eviction a defense to a claim for rent, it must have occurred before the rent claimed became overdue, as it is no defense to an action for accrued rents. And this has been held true, though the rent was payable in advance and the tenant was evicted after the day of payment, but before the expiration of the period for which the rent was so payable." 16 R. C. L., 952.

So in any view of the case, whether the landlord was responsible for the overflow from this closet or not, there was no eviction. There was no actual eviction, because there was no dispossession of plaintiffs in error. They could not claim constructive eviction until they quit the store. Affirmed.