**MURRAY OHIO MANUFACTURING COMPANY, Plaintiff in Error,**

v.

**William Eugene VINES, Defendant in Error.**

Supreme Court of Tennessee.

Sept. 4, 1973.

Boston & Weatherford, Lawrenceburg, for plaintiff in error.

William Travis Gobble, Lawrenceburg, for defendant in error.

## OPINION

FONES, Justice.

The parties will be referred to herein as they appeared in the lower court; that is, William Eugene Vines, defendant in error, as plaintiff, and Murray Ohio Manufacturing Company, plaintiff in error, as defendant.

Defendant appeals from an award of 40% permanent partial disability to the body as a whole and a finding that the one-year statute of limitations began to run from the date that a neurosurgeon diagnosed a ruptured disc, rather than the date of the last compensable injury. Other issues raised are that the findings of fact must be disregarded because neither party requested findings of fact, and because the trial judge required plaintiff's counsel to prepare same; that the award of 40% permanent partial disability is based on plaintiff's disability resulting from rheumatoid arthritis, a condition neither caused nor aggravated by accidental injury.

Plaintiff worked for defendant from 1957 until October, 1970. At the time of the two injuries that he sustained, he was working on an assembly line where his duties consisted of taking tricycle wheels off the assembly line, putting a ring of bearings on each side of the wheel, and placing them for another worker to press the bearings on. Periodically, he was required to shovel bearings from a tub to the receptacle from which he transferred them by hand to the tricycle wheels.

On October 27, 1967, plaintiff sustained an injury by accident while shoveling ball bearings from the tub. He was away from work approximately thirty days as the result of said injury and his medical expenses and temporary total disability benefits due under the Act were paid by defendant. He was seen by a Dr. Henderson, and was also treated by Dr. Harry Simpson, Jr., who testified as follows with respect to the result of an X-ray examination, on October 31, 1967:

" . . . at that time there was moderate narrowing of the inner vertebral disk spaces posterially at the lumbo sacral level as well as L–4 and L–5 level. There is a slight increase of the Lumbo Sacral angle otherwise the height of the vertebral bodies and inter vertebral spaces appear normal and maintain throughout. Only minimum degenerative changes were present, the boney architect appears normal throughout. These are changes which I will consider consistent with but not diagnostic of, and this is my quote, 'a lumbar disk'."

On January 29, 1970, plaintiff was shoveling some metal bearings and sustained another injury to his back with pain radiating down the left leg. He was admitted to the hospital on January 30, 1970. He returned to work on March 9, 1970. Defendant paid all sums due under the Compensation Act for medical expenses and temporary total disability. He sustained no other accidental injury while in the employ of defendant.

In October, 1970, plaintiff was discharged because he had missed 342 work days within the three-year period preceding said date, and was not able to keep up with his work.

Evidence was adduced that Dr. Simpson had treated plaintiff for an arthritic condition since 1962 and that, on several occasions prior to October, 1967, plaintiff was hospitalized. The only indication that any of said treatments or hospitalizations were connected with accidental injury in defend-

ant's employ appears at page 13 of the Bill of Exceptions. Plaintiff was asked how many times in all he got hurt while performing his duties at Murray Ohio, to which he answered, " . . . three different times." He identified the time, other than October, 1967 and January, 1970, as "about 65 or 66, somewhere in there." No other testimony appears in the record with respect to the nature or result of the 1965 or 1966 injury.

In early 1971, plaintiff was again having trouble with his back, and was hospitalized by a doctor practicing in the same clinic with Dr. Simpson. There is some evidence that 7 or 8 days prior to this admission, he had an injury while changing a tire at a service station where he was working part time. No medical testimony was adduced giving significance to said injury. Dr. J. D. Nofzinger, a neurosurgeon, was called in consultation and he performed a lumbar myelogram on plaintiff on February 26, 1971. As a result of this study, Dr. Nofzinger made a diagnosis of ruptured disc at the L–4 and possibly L–5 level. He discussed this diagnosis with plaintiff and recommended an operation. On March 2, 1971, Dr. Nofzinger performed said operation, encountered a ruptured disc at L–4 and found L–5 to be normal.

Dr. Nofzinger examined him on July 9, 1971, and was of the opinion that he could return to work on that date, or within the next week, with a weight-lifting maximum of 45 pounds for a period of one month; that, thereafter, while there would be no weight limitation, he was instructed as to how he should pick up heavy objects.

We will first consider defendant's assignments of error with regard to the status of the written findings of fact that appear in the technical record, signed by the trial judge.

The defendant's third assignment is:

"That the Court committed error in signing a finding of fact when a finding of fact had not been requested by either party."

■ Counsel for the plaintiff states in the reply brief that he made a request for findings at a time prior to the entry of judgment but subsequent to the date that the findings were signed by the trial judge and filed in the cause. There is nothing in the transcript or the bill of exceptions to support the statement that such request was made. We cannot take cognizance of events that are alleged to have occurred in the trial court, dehors the record. Therefore, we will consider defendant's third assignment on the basis of what is reflected by the record, to-wit, that the findings were made without a request by either party.

Rule 52.01, TRCP, provides:

*"Findings Required Upon Request.*—In all actions tried upon the facts without a jury, and upon request made by any party prior to the entry of judgment, the court shall find the facts specially and shall state separately its conclusions of law thereon and direct the entry of the appropriate judgment. . . . "

■ The Committee's Comment on Rule 52.01 is that said Rule conforms, generally, to previous practice as set out in T.C.A. §§ 20–1321 and 27–113. Rule 52.01 is couched in similar language to, and supersedes, § 20–1321. (Said Section was repealed by Chapter 565, Acts of 1972, Section 1). T.C.A. § 27–113, prior to and after the 1972 amendment, is not applicable to a workmen's compensation case because such cases are not subject to review in the Court of Appeals.

In Stephens v. Mason, 99 Tenn. 512, 42 S.W. 143 (1897), this Court construed Shann.Code Sec. 4684, which was substantially the same as T.C.A. § 20–1321, including use of the words "if requested by either party." In *Stephens,* it was said:

"It has long been the practice of this Court to disregard such finding, and treat it as no part of the record, unless it appears to have been requested before the decision. The finding here copied

into the transcript recites in its introductory sentence that it was requested 'after judgment'; hence it cannot be made the basis of an assignment of error, or the ground of an attack on the judgment. In this case, therefore, as in that of a special finding without a request at any time (Brooks v. Paper Co., 94 Tenn. 701, 31 S.W. 160), the judgment rendered must be treated as a general verdict upon a correct charge of the law. . . ."

This rule was subsequently followed in the cases of Hinton v. Ins. Co., 110 Tenn. 113, 72 S.W. 118 (1902); Weinstein v. Barrasso, 139 Tenn. 593, 202 S.W. 920 (1918); Stapp v. Andrews, 172 Tenn. 610, 113 S.W.2d 749 (1938), and P. H. Reynolds & Co. v. McKnight, 177 Tenn. 228, 148 S.W.2d 357 (1941).

In the course of the opinion in P. H. Reynolds & Co., supra, a compensation case, the Court made the following statement:

"In disposing of the case the trial judge made some oral comment, which appears to have been taken down by the court reporter, and has been preserved in the bill of exceptions. Errors are assigned with reference to certain of these observations. There was no request for a written finding by the court below and his oral comments so preserved are no proper part of the record and can not be looked to by this court. Weinstein v. Barrasso, 139 Tenn. 593, 202 S.W. 920, L.R.A.1918D, 1174, and cases cited."

■ It is apparent that Rule 52.01, TRCP, requires that findings be made upon request of a party, but it is equally apparent that the Rule, and the prior statutes upon which it is based, do not prohibit the trial court from making findings in the absence of a request.

It appears that the practice of disregarding unrequested findings is a matter of case law originating out of court practice at some undisclosed time prior to 1895.

See Brooks v. Paper Co., 94 Tenn. 701, 31 S.W. 160 (1895). The current practice is best described in the following excerpt from 2 Gibson's Suits in Chancery, 5th Ed., Chapter 63, entitled "Suits Under the Workmen's Compensation Act", Sec. 1162, pp. 519–520:

"It is well for the Chancellor, as proceedings under the Act are of a special and peculiar kind, to make special findings of fact as the basis of his decree, especially where there is no agreement as to them. This should be insisted upon by the litigants, not only for the purposes of disposing of the issues raised, but for future purposes. . . .

In cases where there is a sharp conflict regarding the time and place of the injury and of its extent and its connection with the employee's course of conduct, or as to whether he received his injuries from conditions or acts incident to his employment, the conclusions of the Court should be clear and unambiguous. But a general finding in favor of the petitioner or respondent will be interpreted as finding for or against the facts essential to a recovery, and such decree will be valid although there were no specific findings of fact."

■ Contrary to widespread belief among bench and bar alike, the filing of specific findings of fact in a compensation suit is not mandatory on the part of Chancery, Circuit and Criminal Courts. See T.C.A. § 50–1018. However, we agree with Chancellor Gibson's statement that it is well to incorporate specific findings into the decree of the trial court in a compensation case. Such findings should include:

". . . not a recital of the evidence, with its conflicting lights and tendencies, but a determination by the trial judge of the facts established by the evidence, responsive to the issues presented, with the conclusion as to whether the facts found establish or fail to establish the liability asserted; and that there should

be a finding of every fact necessary to sustain the judgment of the court; . . ."

146 A.L.R. 123, 126, n. 8 (1943).

Specific findings by the trial court are of incalculable aid to this Court in its review of this class of cases. We agree with what the Court in Stanley v. Donoho, 84 Tenn. 492 (1886), said in referring to Code Section 2673, M. & V. (now Rule 52.01, TRCP); that the statute ". . . furnishes perhaps the only means by which this court could intelligently review the action of the court below."

■ Counsel for the plaintiff insists that the cases mentioned heretofore, holding that findings of fact not requested by either party constitute no part of the record, are out of harmony with the practice of courts today. We are inclined to agree. We see no good reason why this Court should ignore express findings; to the contrary, we are of the opinion that the presence of specific findings promotes a just and speedy determination of the issues. Therefore, we hold that express findings of fact by the trial court in a compensation case, although unrequested by either party, shall be entitled to the same effect as findings requested by a party under Rule 52.01, TRCP.

The defendant's 4th assignment states:

"That the Trial Court committed error in permitting or requiring attorney for plaintiff, the successful party, to prepare the finding of fact."

The defendant relies on the case of Railroad v. Price, 125 Tenn. 646, 148 S.W. 219 (1911), which held that it is improper to permit or require counsel for the successful party to prepare written findings of fact.

■ While we agree in principle with the holding in Railroad v. Price, supra, we cannot apply that rule to the present case, because there is nothing in the technical record or the bill of exceptions to substantiate the allegation that the trial judge required plaintiff's counsel to prepare the findings of fact and that, as so prepared, he adopted and signed same as his own. Said charge is made in defendant's brief and there is a qualified admission in plaintiff's brief that counsel for plaintiff prepared findings, as instructed by the court, but based on oral findings pronounced by the court at the conclusion of the proof and argument.

This Court has previously held that the bill of exceptions must reflect instances of alleged misconduct or erroneous actions of the trial judge not reflected in the technical record. Brown v. Vaughn, 203 Tenn. 220, 310 S.W.2d 444, 448 (1957); Bass v. State, 191 Tenn. 259, 231 S.W.2d 707, 714 (1950), and Tennessee Cent. R. Co. v. Vanhoy, 143 Tenn. 312, 334, 226 S.W. 225 (1920).

Accordingly, the 4th assignment is overruled.

Defendant's 7th assignment of error is as follows:

"The Trial Court erred in finding that plaintiff is entitled to receive medical expenses that were incurred more than two years from the date of the alleged injury."

No medical expenses were allowed beyond January 29, 1972. Defendant's argument and citation of authorities in support of this assignment are to the effect that plaintiff did not consult defendant prior to incurring the medical expenses incident to the disc operation; that, pursuant to Section 50–1004 and the cases construing same, defendant has no liability for Dr. Nofzinger's bill or the hospital expenses.

Plaintiff was asked on cross-examination whether or not he signed a Blue Cross claim form to pay Dr. Nofzinger's bill for the disc operation. He responded by stating that his wife did that after the doctor sent her and his father ". . . to get an obligation from the plant to operate, but

they wouldn't give it to them, so I had to do it on my own."

■ Said testimony provides some evidence that defendant was notified that plaintiff was about to have an operation and that plaintiff was asserting that defendant had an obligation for the medical expenses incident to said operation. Defendant did not adduce any proof at the trial of this case and the implications of plaintiff's answer are not challenged anywhere in the record. Further, there was no evidence that the defendant objected to the operating surgeon and tendered three other physicians. The 7th assignment of error is overruled. See Smith v. Norris, 218 Tenn. 329, 403 S.W.2d 307 (1968).

Defendant's 8th assignment is that the trial court erred in finding that plaintiff's action was not barred by the one-year statute of limitations. In support of said assignment defendant contends that plaintiff knew he had some type of difficulty in his lower back as a result of the three injuries he testified that he had sustained; that plaintiff alleged in his complaint that the January, 1970 injury was an aggravation of a pre-existing lumbar disc and that there is no evidence to support the trial court's finding that plaintiff did not learn that he suffered a ruptured disc as a result of said accidents until February or March of 1971.

The holding of this Court in Imperial Shirt Corporation v. Jenkins, 217 Tenn. 602, 399 S.W.2d 757 (1966), controls the disposition of this assignment of error.

The controlling language in our statute of limitations applicable to workmen's compensation cases has been held to be ". . . one (1) year after the occurrence of the injury." (Section 50–1017). We are aligned with those states that are said to have the "injury type" statute as distinguished from the "accident type" statute. Admittedly, the injury type statute provides a less definate date of accrual of employee's cause of action. The running of the statute is said to be suspended " . . . until by reasonable care and diligence it is discoverable and apparent that a compensable injury has been sustained."

In *Jenkins,* supra, the employee sustained a back injury on December 20, 1961. He was given heat treatments and returned to work. He next saw doctors in the Spring and Summer of 1963, spent five days in the hospital and had a series of X-ray examinations, but no diagnosis was made. He returned to work but his back continued to cause him pain. He was eventually referred to a neurosurgeon who diagnosed his condition as a ruptured disc on January 24, 1964. The trial judge found that his compensation claim accrued on January 24, 1964 and this Court affirmed.

■ In the instant case, Dr. Simpson's testimony in regard to the X-ray examination made on October 31, 1967, did not result in a diagnosis of ruptured disc. Plaintiff was treated conservatively and returned to work after the 1967 and 1970 accidental injuries and was being treated by Dr. Simpson frequently for his arthritic condition. It is uncontradicted that the first diagnosis of a ruptured disc was made by Dr. Nofzinger in February, 1971, and it follows that plaintiff, a man with a sixth-grade education cannot be charged with a lack of reasonable care and diligence in failing to make an earlier discovery that he had a ruptured disc. The trial judge found that his compensable claim for the disc injury accrued when Dr. Nofzinger made the diagnosis in February, 1971, and there is material evidence in support thereof. The 8th assignment is overruled.

Defendant's 6th and 9th assignments of error complain that the trial court's finding of 40% permanent partial disability to the body as a whole is based upon plaintiff's rheumatoid arthritis, which has no causal connection with any accidental injury sustained by plaintiff, while employed by defendant. The trial judge's findings

of fact with respect to permanent partial disability are as follows:

" '6. That as a result of the injury and/or injuries suffered by the plaintiff while acting as an employee of the defendant, his ability to earn a living has been substantially impaired and his prior existing rheumatoid arthritic condition has been seriously aggravated by said injury or injuries and the court hereby finds that he is 40% permanently partially disabled to the body as a whole. . . . '

The court is mindful of the fact that clinical or neurological disability as stated by a doctor is one of the facts to consider in assessing disability in a workmen's compensation case. Here, Mr. Vines has no vocational training, has only a sixth grade education, and has always made his living as a manual laborer. The court takes recognizance (sic) of the recent case of Pulaski Rubber Co. v. Rollin, Tenn., 481 S.W.2d 369 (1972) in making this award of 40% permanent partial disability."

Dr. Nofzinger testified that, in his opinion, the process that ultimately resulted in the ruptured disc started with the accidental injury on October 27, 1967 and, on cross-examination, testified as follows:

"A. In my opinion he has a permanent disability based on the body as a whole as judged by the standards set forth by the American Medical Association would be 8%.

Q. That 8% would be attributable to this accidental injury shoveling these bearings?

A. Attributable to the ruptured disk, and the subsequent removal of the disk, and the surgical procedure.

Q. Caused from shoveling the bearings?

A. That is right."

On re-direct examination, Dr. Nofzinger stated that said disability rating gave no consideration to any disability caused by rheumatoid arthritis. He further testified that, ". . . you can state emphatically that rheumatoid arthritis is not the result of any kind of injury."

Dr. Simpson testified that he had treated plaintiff for rheumatoid arthritis since approximately 1962. Until 1970, the treatment consisted of aspirin and salicylates, with occasional heat and hospital admissions where he was placed in traction. When plaintiff failed to respond to these measures he began Gold shots and thiosulfate preparation. At the time Dr. Simpson's deposition was taken, November 10, 1971, he was still treating plaintiff's rheumatoid arthritis in said manner. Dr. Simpson further testified that he was not sure that plaintiff had rheumatoid arthritis of the spine but that he was sure he had rheumatoid arthritis of the "paraforial" (sic) joints, that is, the arms and legs; that plaintiff had hypertrophic osteo arthritis of the spine, ". . . and wearing out is really the basis of hypertropic osteo arthritis. Like your tires they wear out if you drive your car. People wear out." At the time Dr. Simpson gave his deposition, he was aware that plaintiff had been seen by Dr. Nofzinger, but testified that it was his belief that Dr. Nofzinger had suggested a lumbar myelogram, but, as far as he knew, it had not been done, nor was he aware that a disc operation had been performed. Dr. Simpson further stated that he was not trained well enough to put a percentage of evaluation on disability. Thus, Dr. Simpson's comments on plaintiff's disability for hard work were based on the arthritic condition, rather than the compensable disc injury.

■ The medical testimony is that plaintiff had rheumatoid arthritis in the

joints of the arms and legs, but had hypertrophic arthritis of the spine. The accidental injuries sustained by plaintiff were in the lumbar area of the spine. There is no evidence that plaintiff sustained accidental injuries to the joints of his arms and legs. As this Court said in Blalock Bros. Construction Co. v. Williams, Tenn., 483 S.W.2d 578 (1972), the material evidence to support a finding by the trial judge of permanent disability based on aggravation for a pre-existing condition must take the form of expert medical opinion. It is therefore our conclusion that there is no material evidence in this record to support that portion of the finding by the trial judge of permanent partial disability attributable to aggravation of plaintiff's prior existing rheumatoid arthritis, by a compensable injury.

There is material evidence to support a finding that plaintiff sustained a permanent partial disability as a result of the ruptured disc and the operation to alleviate that condition. We have repeatedly held that there is a difference between medical disability and work disability. In finding plaintiff to be 40% disabled, the trial judge has taken into consideration plaintiff's disability resulting from rheumatoid arthritis, which we hold was error. On the other hand, it would be improper for this Court to make a finding of the plaintiff's work disability attributable to the ruptured disc. We therefore remand this case to the trial court with instruction to determine the permanent partial disability of plaintiff, giving no consideration to his disability resulting from rheumatoid arthritis of the arms and legs.

The costs are assessed three-fourths against defendant and one-fourth against plaintiff.

DYER, C. J., and CHATTIN, HUMPHREYS and McCANLESS, JJ., concur.