OPINION
FONES, Justice.
In this worker’s compensation case plaintiff, John Anthony, appeals from the decree of the trial court denying his claim that he sustained a permanent partial disability. Plaintiff was injured in the course and scope of his employment on April 20, 1981, and also claims to have suffered a re-injury on August 10, 1981. There was no denial that he suffered a work injury on April 20, 1981, and defendants paid temporary total disability and medical expenses for treatment by doctors on the employer’s list.
In this Court there are only two issues, whether plaintiff’s request for findings of fact was timely and whether there is any material evidence to support the trial judge’s denial of plaintiff’s claim of a permanent partial disability.
Doctor Warmbrod, an orthopedic surgeon, testified by deposition that he first saw plaintiff on April 25, 1981; that Dr. Lane had referred plaintiff to him after plaintiff failed to respond to Dr. Lane’s therapy. Plaintiff complained of low back pain but no leg pain. Doctor Warmbrod thought at that time he was dealing with a lumbar sacral strain. He recommended an anti-inflammatory medication and encouraged him to walk at least two miles per day. He determined that plaintiff had no disc disease nor any kind of nerve root irritation. When plaintiff returned to Dr. Warmbrod on June 15, 1981, he reported that he was much improved and was able to walk a mile or two several times a day. On that visit Dr. Warmbrod told him to continue his walking and arranged for outpatient physical therapy at the hospital and told him to return in three weeks.
Plaintiff returned on July 7 and reported that his back was still hurting. Doctor Warmbrod testified that he thought plaintiff had had plenty of time to get over the *306 injury he had sustained on April 20 and tried to encourage plaintiff. He fitted him with a lumbar sacral corset, gave him a mild pain medication and told him he could return to work on July 13 and return to the doctor’s office in three weeks. Plaintiff returned in two weeks and for the first time complained of leg pain. Doctor Warmbrod told him to continue with Motrin, the anti-inflammatory medication and return in three weeks. Plaintiff returned in eight days and said he couldn’t work because of his back and leg pains. Doctor Warmbrod hospitalized him the next day, July 29, 1981.
In the hospital Dr. Warmbrod performed a lumbar myleogram, an electromyoence-phalogram, a nerve conduction study, and each test was entirely within normal limits. He consulted with a neurosurgeon and both concluded that they were dealing with a muscular problem and that the recommendation to the patient should be that he try to resume normal activities as soon as possible. Doctor Warmbrod described plaintiff’s reaction to that advice as follows:
“When I tried to talk to the patient and explain what we had found I felt like our relationship rapidly deteriorated. The patient strongly felt that there was something seriously wrong with him. And we have tried to talk to him and explain to him that we have done the tests, we have examined him and we could not find any evidence of any serious back injuries.
I tried to encourage him to resume activities. He said I had insulted him by not finding anything wrong with him. And at that time he requested to go home and he requested to see Dr. Robert Barnett. I just — I told him I would not refer him to this doctor. I told him if he shopped around long enough, he would eventually find someone that would operate on his back; and I felt like this would be a big mistake.
I tried to explain to him again that we had found nothing seriously wrong with him, that he was a young man, and I would hate to see him become a back cripple. So, he was discharged.”
The discharge date was August 5, 1981. Doctor Warmbrod testified that he next saw plaintiff on August 10, 1981, in the emergency room at the hospital where plaintiff said that about one and one-half hours after he went to work he fell down some steps and injured his back. He was very uncooperative with the nurses, vague about how far he had fallen, but was complaining of severe pain and moaning and groaning. Doctor Warmbrod talked to plaintiff’s supervisor who reported that the company had no history of a fall at work on that date. Doctor Warmbrod testified that plaintiff would moan and groan and complain but at other times would stop and seem to be comfortable; that one time he tried to pick up his leg and plaintiff groaned and would not allow it and later he picked up his leg to about seventy-five degrees. Doctor Warmbrod could find no motor weakness; plaintiff’s deep tendon reflexes were equal and he concluded that his problems were psychological since there were no objective findings to substantiate plaintiff’s subjective complaints.
Doctor Robert Winston testified by deposition. In giving his professional background he stated that he served a one year residence-internship in internal medicine and a two year residency in internal medicine, but did not say that he was Board Certified in internal medicine. He saw plaintiff for the first time on July 25, 1981, at his office. Plaintiff was complaining of back pain from an injury at work on April 20, 1981. His finding was that plaintiff had muscle spasm in the lumbar spine area. He acknowledged that a “diagnosis of muscle spasm is a subjective one. You can’t really tell the extent of the muscle-ligamen-tal injury that you are dealing with.” He testified that the normal treatment for muscle spasm was anti-inflammatory agents, muscle relaxants, physical therapy and hot packs and that the average patient would be expected to recover from a muscle spasm within four to eight weeks.
Doctor Winston next saw plaintiff in the hospital on August 10. Apparently Dr. *307 Warmbrod advised Dr. Winston that he was withdrawing from the care of plaintiff. Doctor Winston testified that he consulted with Dr. Warmbrod on August 10, and in addition to the normal treatment he recommended that plaintiff see a psychiatrist because he had severe depression. His depression, according to Dr. Winston, was brought about by his feeling that he was permanently injured and would not be able to make a living and care for his family. The record contains no evidence of the result of any psychiatric examination or treatment.
Doctor Winston saw plaintiff twenty-two times in his office between August 10, 1981 and January 26, 1983. Although as time went on plaintiff expanded his complaints to neck pain, pain radiating down both legs to his heels, headaches, etc., Dr. Winston testified that his physical finding was “a moderate amount of tenderness of the lumbar sacral area,” that was essentially unchanged throughout that period. Also, his treatment was essentially unchanged although for a short period he prescribed steroids and at another time Valium.
Doctor Winston’s deposition was taken on January 20, 1983, and again on February 9, 1983. In the interim he had seen plaintiff on January 26, 1983. The entire direct examination of Dr. Winston on February 9, 1983, was as follows:
Q. Doctor, I have one question for you on the John Anthony case. I understand that you gave him a rating of twenty-five percent disability. Is that true?
A. Yes.
Q. And in your opinion do you think that is a fair and reasonable percentage of disability?
A. Yes.
This case was tried in 1983 and taken under advisement. On February 27, 1984, the trial judge notified counsel for the parties to prepare an order dismissing the case. On March 9 an order was entered reciting that in the opinion of the court the plaintiff had failed to “meet his burden of proving by a preponderance of the evidence that he has any permanent disability that is causally related to the alleged injuries of April 20, 1981, or August 10, 1981,” and that since the defendant’s insurer had paid all of the benefits plaintiff was entitled to, the suit should be dismissed at plaintiff’s cost.
Plaintiff filed a “Motion To Reconsider” or in the alternative to allow plaintiff to present psychiatric evidence.[1] The motion failed to state any grounds whatever in support of the relief sought. See T.R.C.P. 7.02. However, the trial judge held a hearing on the motion and an order was entered on October 16, 1984, reciting that upon further review the court remained of the opinion that plaintiff had failed to prove any permanent disability causally related to accidents at work. The final paragraph recited the following:
“The court is of the opinion its order of dismissal entered March 9, 1984 is correct and this action remains dismissed with costs taxed to the plaintiff for which execution may issue.”
On October 10, 1984, plaintiff filed a motion for findings of fact pursuant to T.R.C.P. 52.01. Plaintiff asserts as his first issue in this Court that the trial judge committed reversible error in failing to respond to his Rule 52.01 motion.
Defendant says, first, that this Court held in Murray Ohio Manufacturing Co. v. Vines, 498 S.W.2d 897 (Tenn.1973) that T.R.C.P. 52.01 did not apply to worker’s compensation cases and, second, even if the rule did apply the request was not timely filed.
Defendant has misread Vines. In that case the trial judge signed and caused to be filed in the technical record written findings of fact although neither party had requested findings in accordance with T.R. C.P. 52.01. Defendant insisted that non-requested findings have no status and should be disregarded entirely. In deciding that issue under the facts of Vines, the Court *308 held that (1) Rule 52.01 requires that findings of fact be made, if timely requested by either party, (2) it is not mandatory that findings be made, in the absence of a request by a party, and (3) if the trial judge makes findings of fact, although not requested by any party, they shall have the same effect as findings requested by a party under Rule 52.01 T.R.C.P. Since Vines was a worker’s compensation case, if it had been the Court’s intention to hold that T.R.C.P. 52.01 did not apply to worker’s compensation cases, we would have said so and omitted the foregoing rulings.
We agree with defendant that plaintiff’s motion for findings was not timely. The rule expressly requires that the request be made “prior to the entry of judgment.” Judgment was entered in this case on March 9, 1984. The trial judge, in effect, treated plaintiff’s motion to reconsider as though it was a motion for a new trial. In a worker’s compensation case, a motion for a new trial is not a condition precedent to the perfection of an appeal. See DeLong v. Pans Hans Properties, 626 S.W.2d 697 at 699 (Tenn.1982). A “judgment” as used in the Tennessee Rules of Civil Procedure includes a decree or any order from which an appeal lies. The March 9, 1984 order was an appealable final decree. It follows that a request for findings on October 10,1984, came too late.
Defendant insists that Dr. Winston’s testimony recited hereinabove fails to describe plaintiff’s condition as permanent and leaves plaintiff without any evidence upon which an award of permanent partial disability could be made. We agree that a plaintiff cannot be held to have met the burden of proving the permanency of his disability where the expert medical testimony fails to describe his resulting condition as permanent. See Owens Illinois Inc. v. Lane, 576 S.W.2d 348 (Tenn.1978).
However, if we could interpret Dr. Winston’s testimony as expressing his medical opinion that plaintiff had a twenty-five percent permanent partial disability of the body as a whole, it would not benefit plaintiff. Doctor Warmbrod’s testimony provided material evidence in support of the trial judge’s finding that plaintiff had not established a work connected permanent partial disability and we cannot disturb that judgment because of the material evidence rule.
The judgment of the Chancery Court of Madison County is affirmed. Costs adjudged against plaintiff.
BROCK, C.J., and COOPER, HARBI-SON and DROWOTA, JJ., concur.

. Motions to reconsider are not authorized and do not operate to extend the time for appellate proceedings. T.R.C.P. 59.01, effective August 20, 1984.