# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 6, 2000 Session

# TAMMY JEWELL ROBERTSON v. WALTER SCOTT ROBERTSON

**Appeal from the Circuit Court for Franklin County**
**No. 11,377-CV      Thomas W. Graham, Judge**

---

### No. M1999-02103-COA-R3-CV - Filed May 2, 2001

---

This appeal involves a dispute over the division of a marital estate following a marriage that lasted approximately two and one-half years.  Both parties sought a divorce on the ground of inappropriate marital conduct in the Circuit Court for Franklin County.  During a bench trial lasting two days, the parties stipulated that they both had grounds for divorce but hotly contested the classification, valuation, and division of their marital and separate property.  The trial court declared the parties divorced and divided their property without clearly classifying or placing a value on it.  On this appeal, the wife asserts that the trial court erred by considering the husband's contributions to the marital home as his separate property and that the net division of the marital estate was inequitable.  Despite the ambiguity resulting from the trial court's failure to classify and value the parties' property, we have determined that the trial court's division of the martial estate was essentially equitable.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Robert A. Anderson, Nashville, Tennessee, for the appellant, Tammy Jewell Robertson.

Clinton H. Swafford, Winchester, Tennessee, for the appellee, Walter Scott Robertson.

## OPINION

Scott Robertson and Tammy Jewell Robertson were married on August 24, 1996, in Franklin County – approximately five months after the finalization of Mr. Robertson's divorce from his first wife.  Mr. Robertson was forty years old, and Ms. Robertson, who had been married twice before, was thirty-five.  While the parties had children from their previous marriages, they had no children together.

Both parties had accumulated substantial assets of their own prior to the marriage.  Rather than keeping their assets separate following the marriage, the parties agreed to pool their resources for their mutual benefit.  Accordingly, during the marriage, the parties purchased investment property at Tims Ford, built and sold a house on speculation, and constructed an office building that housed

Ms. Robertson's business. They also completed the construction of a house that Mr. Robertson had started before the marriage and built a second home valued at more than $350,000. Much of this property was titled jointly, and the corresponding debts were paid from joint marital accounts.

The parties separated, and on February 16, 1999, Ms. Robertson filed suit in the Circuit Court for Franklin County seeking a divorce on the grounds of inappropriate marital conduct and irreconcilable differences. Mr. Robertson counterclaimed for a divorce on the ground of inappropriate marital conduct. During the divorce proceedings on June 22 and 25, 1999, the parties stipulated that each of them had grounds for a divorce but disagreed over the distribution of the marital property and debts. In its July 6, 1999 divorce decree, the trial court declared the parties divorced and divided the parties' property without clearly classifying many of the items of property as separate or marital and without placing a value on them. Thereafter, Ms. Robertson filed a timely motion pursuant to Tenn. R. Civ. P. 52.02 and 59.04 requesting the trial court to divide the marital estate more equitably and to make findings of fact setting forth the reasons for the division of the marital property in the July 6, 1999 decree. On October 6, 1999, the trial court filed an order amending three relatively minor aspects of the division of the marital property. Ms. Robertson has appealed.

**I.**

Both parties take the trial court to task with regard to the treatment of the house on Overlook Circle and the Fortune Practice Management, Inc. stock. Ms. Robertson asserts that the trial court erred by treating $100,000 of Mr. Robertson's contributions to the construction of the Overlook Circle house as his separate property. For his part, Mr. Robertson asserts that the trial court erred by failing to treat the Overlook Circle house as his separate property when it treated the Fortune Practice Management, Inc. stock as Ms. Robertson's separate property. Ms. Robertson also argues that the trial court's decision to award her approximately forty percent of the net marital estate is inequitable.

**A.**
**THE CLASSIFICATION OF THE OVERLOOK CIRCLE HOUSE**
**AND THE FORTUNE PRACTICE MANAGEMENT, INC. STOCK**

The parties' arguments with regard to the classification of the Overlook Circle house and the Fortune Practice Management, Inc. stock reflect the ambiguity resulting from the trial court's failure to specifically classify each piece of property as either separate or marital property. In its July 6, 1999 divorce decree, the trial court awarded Mr. Robertson the Overlook Circle house and awarded Ms. Robertson the Fortune Practice Management, Inc. stock without explicitly classifying these assets as separate or marital property.[1] Thus, we must begin where courts ought to begin when they are called upon to divide marital property – classifying the property as either marital or separate. *Anderton v. Anderton*, 988 S.W.2d 675, 679 (Tenn. Ct. App. 1998); *McClellan v. McClellan*, 873

---

[1] At one point during the proceedings, the trial court observed that "I'm pretty sure that this stock is not going to be considered marital property." Later in its divorce decree, the trial court referred to the stock as "her Fortune Practice Management stock." In the absence of specific findings in the divorce decree, these oblique statements do not warrant presuming that the trial court treated the stock as Ms. Robertson's separate property.

S.W.2d 350, 351 (Tenn. Ct. App. 1993); *Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988).

Both parties had accumulated assets prior to the marriage. Mr. Robertson owned a lot on Overlook Circle and had started constructing a house on that lot. Mr. Robertson testified that he had invested approximately $100,000 in the property prior to the marriage.[2] Following the marriage, the parties jointly borrowed $30,000 to complete the house and to purchase furniture. Later, the parties paid off this loan with the proceeds of a larger loan. The payments on these loans were drawn from joint accounts.

Ms. Robertson owned 17.32% of the stock in Fortune Practice Management, Inc., when the parties married. She and two other investors had borrowed $41,000 to purchase a portion of this stock. At the time of the marriage, Ms. Robertson still owed $3,600 of the original $41,000. The outstanding indebtedness amounted to a 1.32% interest in the company based on the value of the stock at the time of the marriage. After the marriage, the parties used marital funds to repay the $3,600 indebtedness.

Mr. Robertson held the title to the Overlook Circle property in his own name, and Ms. Robertson owned the Fortune Practice Management, Inc. stock in her own name. Early in the marriage, they agreed that Mr. Robertson would place the Overlook Circle property, which they were using as their marital home, in their joint names and that, in return, Ms. Robertson would place her Fortune Practice Management, Inc. stock in their joint names. In February 1997, Mr. Robertson conveyed the Overlook Circle property to himself and Ms. Robertson as tenants by the entirety. However, the Fortune Practice Management, Inc. stock was never placed in both parties' names. Ms. Robertson testified that she attempted to do so but that the company's board of directors declined to place the stock in the parties' joint names.

At trial, Ms. Robertson argued that all but 1.32% of her Fortune Practice Management, Inc. stock remained her separate property because she had acquired it before the marriage. She conceded that 1.32% of the stock was marital property because the $3,600 balance of the loan used to purchase the stock was repaid using marital funds. For his part, Mr. Robertson argued that just as 16% of the Fortune Practice Management, Inc. stock was Ms. Robertson's separate property, he should be given a "$100,000 credit" on the Overlook Circle property reflecting his contributions of separate property to the purchase and improvement of the property. The trial court awarded Ms. Robertson the Fortune Practice Management, Inc. stock and awarded Mr. Robertson the Overlook Circle property as well as the outstanding indebtedness on the property.

In light of the parties' conduct during the marriage, we have determined that both the Overlook Circle property and the Fortune Practice Management, Inc. stock are part of the marital estate. Even though the parties held these assets as their separate property prior to the marriage, it is clear that they intended to commingle these assets with their marital estate rather than to continue holding them as separate property. The parties' agreement to place these assets in their joint names,

---

[2]This amount included $40,000 from the pre-marital sale of other separate property, $18,600 from a life insurance policy Mr. Robertson cashed out following his divorce from his first wife, and $40,000 in salary and proceeds from other homes Mr. Robertson had constructed and sold prior to the marriage.

their use of marital funds for these assets, their use of the Overlook Circle property as their marital home, and their placing the title to the Overlook Circle property in their joint names trigger the transmutation of both of these assets from separate to marital property. *Wright-Miller v. Miller*, 984 S.W.2d 936, 941 (Tenn. Ct. App. 1998); *McClellan v. McClellan*, 873 S.W.2d at 351; *Batson v. Batson*, 769 S.W.2d at 858.

Ms. Robertson argues that the Fortune Practice Management, Inc. stock did not transmute into marital property because she was prevented from placing it in the parties' joint names. The status of property as either separate or marital does not, in the final analysis, depend on the state of its record title but on the conduct of the parties. *Cohen v. Cohen*, 937 S.W.2d 823, 833 n.12 (Tenn. 1996); *Jones v. Jones*, 597 S.W.2d 886, 887 (Tenn. 1979); *Mondelli v. Howard*, 780 S.W.2d 769, 774 (Tenn. Ct. App. 1989). Thus, the fact that Ms. Robertson remained the sole record owner of the Fortune Practice Management, Inc. stock is not dispositive. The evidence of the parties' conduct during the marriage preponderates in favor of the conclusion that they intended that all the Fortune Practice Management, Inc. stock would be marital property.[3] Thus, just as the Overlook Circle property became marital property, so did the Fortune Practice Management, Inc. stock.

## B.
### THE VALUATION OF THE MARITAL PROPERTY

Courts cannot undertake to divide the marital estate equitably without reaching some conclusion about the value of the marital property and the amount of the marital debt. Accordingly, after classifying the property as either separate or marital, a court should place a value on each piece of property subject to division. *Hunley v. Hunley*, No. 88-206-II, 1988 WL 123956, at *2 (Tenn. Ct. App. Nov. 23, 1988) (No Tenn. R. App. P. 11 application filed); *Cooper v. Cooper*, No. 85-305-II, 1986 WL 10691, at * 2 (Tenn. Ct. App. Oct. 1, 1986) (No Tenn. R. App. P. 11 application filed). The parties themselves must come forward with competent valuation evidence. *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998); *Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987). When valuation evidence is conflicting, the court may place a value on the property that is within the range of the values presented by all the relevant valuation evidence. *Watters v. Watters*, 959 S.W.2d 585, 589 (Tenn. Ct. App. 1997); *Brock v. Brock*, 941 S.W.2d 896, 902 (Tenn. Ct. App. 1996).

A trial court's decision regarding the value of a marital asset is entitled to great weight on appeal and will not be second-guessed unless it is not supported by the evidence. *Watters v. Watters*, 959 S.W.2d at 589; *Smith v. Smith*, 912 S.W.2d 155, 157 (Tenn. Ct. App. 1995). When the valuation evidence is conflicting, making an explicit valuation finding provides helpful insight into the trial court's reasoning, materially enhances the parties' understanding of the trial court's decision, and helps focus the issues on appeal. *See Murray Ohio Mfg. Co. v. Vines*, 498 S.W.2d 897, 901-02

---

[3]Rather than arguing that the Fortune Practice Management, Inc. stock was marital property, Mr. Robertson argued on appeal that the trial court should have treated $100,000 of the value of the Overlook Circle property as his separate property. Mr. Robertson's failure to argue that the stock was marital property does not prevent this court from concluding based on the evidence that the stock was marital property. We are reviewing these factual matters de novo in accordance with Tenn. R. App. P. 13(d), and Tenn. R. App. P. 36(a) empowers us to grant the parties the relief to which they are entitled and which the proceeding otherwise requires.

(Tenn. 1973). Appellate courts are more likely to be able to conclude that a particular valuation decision is supported by the preponderance of the evidence when they have some insight into how the trial court made its decision.

The parties in this case agreed on the value of a number of items of marital property and marital debt.[4] They did not, however, agree with regard to other assets and debts.[5] Accordingly, before we can determine whether the trial court's division of the marital estate was equitable, we must settle these valuation questions.

The trial court expressed some frustration regarding the parties' evidence of the value of the Fortune Practice Management, Inc. stock. Mr. Robertson testified that Ms. Robertson had valued the stock at $160,000 in January 1999 when they were applying for a construction loan for another house. However, Ms. Robertson presented evidence that the value of the stock had decreased significantly during the marriage. She and the company's vice president stated that the entire corporation was worth $336,172 shortly before the divorce hearing, and Ms. Robertson estimated that her stock was worth $86,000. Because the breakup value of Ms. Robertson's 17.32% interest in the company prior to the divorce would have been approximately $58,225, we accredit Ms. Robertson's estimate that her Fortune Practice Management, Inc. stock was worth $86,000.

Ms. Robertson testified that the value of the Overlook Circle property was $155,000 – the price the parties placed on the property when they placed it on the market. Mr. Robertson testified that the value of the property was $150,000 but also conceded that he had made additional improvements to the property such as constructing a paved driveway. Based on this evidence, we find that the value of the Overlook Circle property is $155,000.

Ms. Robertson valued the Tims Ford property at $35,000. For his part, Mr. Robertson testified that one-third of the $99,000 asking price for the property was fair but failed to provide any specific evidence regarding the property's value. He later stated that he was satisfied to "take [Ms. Robertson's] numbers if we get the lot." Accordingly, we find that the value of the parties' one-third interest in the Tims Ford property is $11,666.67 and that the parties' marital debt on this property is $5,100.

Ms. Robertson testified that the Polaris four-wheeler was worth $6,500. Mr. Robertson testified that the parties had paid $6,500 for the vehicle but that it was two years old and had approximately 750 miles on it. Accordingly, he estimated that it was worth $5,000. While Mr.

---

[4]We find no disagreement with regard to the value of the Catherine Court property, the Ogee office building, the proceeds from the sale of the house built on speculation, the increase in the value of Ms. Robertson's retirement account during the marriage, the increase in the value of Mr. Robertson's retirement account during the marriage, the 1996 Ford Explorer, and the 1993 Toyota truck. Likewise, the parties did not disagree with the amount of the following debts: the mortgage on the Overlook Circle property, the mortgage on the Catherine Court property, the loan against Mr. Robertson's 401(k) account, the debt relating to the Tims Ford property, the debt relating to the Ogee office building, and the credit card debt.

[5]Specifically, the parties did not agree on the value of the First Practice Management, Inc. stock, the Overlook Circle Property, the Tims Ford property, the Polaris four-wheeler, the tools, and the country club stock. They also did not agree on the amount of the non-mortgage debt on the Catherine Court property.

Robertson may have added some accessories to the vehicle, we accredit his testimony that it was worth $5,000.

Both parties testified that they purchased a number of construction tools during the marriage, but neither party provided a list of the tools or evidence regarding their purchase price or their current value. Ms. Robertson valued these tools at $10,000; while Mr. Robertson testified that they were worth approximately $2,000. These tools were used as part of the parties' construction activities during the marriage. We accredit Mr. Robertson's testimony that the value of these tools was $2,000.

The evidence regarding the parties' interest in a local country club was quite general. At one point, Ms. Robertson stated that they purchased the stock for "around $600." Later, she valued the stock at "between" six and seven hundred dollars. Based on this evidence, we value the parties' interest in the country club stock at $650.

The parties' final dispute relates to the non-mortgage debt on the Catherine Court property. In addition to the $274,417 mortgage, the parties have other debts relating to the construction and furnishing of this house. Ms. Robertson testified that the amount of this debt was between $8,000 and $12,000; however, Mr. Robertson testified that outstanding debt at the time of trial was only $6,054. We accredit Mr. Robertson's testimony and, therefore, find that the total debt associated with the Catherine Court property is $280,471.

## C.
### THE DIVISION OF THE MARITAL ESTATE

As a final matter, Ms. Robertson asserts that the manner in which the trial court divided the marital estate was inequitable because she received less than one-half of the property. Her argument, for the most part, rests on her belief that her 17% interest in Fortune Practice Management, Inc. should be considered her separate property and that all of the value of the Overlook property should be considered marital property. We have analyzed the trial court's division of the marital estate in light of our conclusion that both the Fortune Practice Management, Inc. stock and the Overlook Circle property are part of the marital estate and have determined that the trial court's division is equitable.

Tenn. Code Ann. § 36-4-121(a) (Supp. 2000) directs the courts to divide the parties' marital estate in an essentially equitable manner. *Kinard v. Kinard*, 986 S.W.2d at 230. A division is not rendered inequitable simply because it is not precisely equal, *Cohen v. Cohen*, 937 S.W.2d at 832; *Bookout v. Bookout*, 954 S.W.2d 730, 732 (Tenn. Ct. App. 1997), or because each party did not receive a share of every piece of marital property. *King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998); *Brown v. Brown,* 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994).

Dividing a marital estate is not a mechanical process but rather is guided by considering the factors in Tenn. Code Ann. § 36-4-121(c). *Kinard v. Kinard*, 986 S.W.2d at 230. Trial judges have wide latitude in fashioning an equitable division of marital property, *Fisher v. Fisher,* 648 S.W.2d 244, 246 (Tenn. 1983); *Brown v. Brown,* 913 S.W.2d at 168, and appellate courts accord great weight to a trial court's division of marital property. *Wilson v. Moore,* 929 S.W.2d 367, 372 (Tenn.

Ct. App. 1996); *Edwards v. Edwards,* 501 S.W.2d 283, 288 (Tenn. Ct. App. 1973). Thus, we will ordinarily defer to the trial court's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence. *Brown v. Brown,* 913 S.W.2d at 168; *Mahaffey v. Mahaffey,* 775 S.W.2d 618, 622 (Tenn. Ct. App. 1989); *Hardin v. Hardin,* 689 S.W.2d 152, 154 (Tenn. Ct. App. 1983).

The trial court's division of the marital estate , as we have defined it in this opinion, is illustrated by the following table:

## Marital Property

| Wife | | Husband | |
|---|---|---|---|
| ½ Catherine Court property | $190,000 | Overlook Circle property | $155,000 |
| ½ Tims Ford property | 5,833 | ½ Catherine Court property | 190,000 |
| ½ Ogee office building | 100,000 | ½ Tims Ford property | 5,833 |
| b Spec. house proceeds | 10,000 | ½ Ogee office building | 100,000 |
| FPM, Inc. stock | 86,000 | a Spec. house proceeds | 5,000 |
| Increase in IRA | 6,340 | Increase in retirement | 32,200 |
| 1996 Ford Explorer | 18,000 | 1993 Toyota truck | 8,500 |
| Country Club stock | 650 | Polaris 4-wheeler | 5,000 |
| | | Tools | 2,000 |
| Total property | $416,823 | | $503,533 |

## Marital Debt

| Wife | | Husband | |
|---|---|---|---|
| ½ Catherine Court mortgage | $140,235 | Overlook Circle debt | $73,000 |
| ½ Tims Ford debt | 2,550 | ½ Catherine Court mortgage | 140,235 |
| ½ Ogee office building debt | 68,000 | ½ Tims Ford debt | 2,550 |
| ½ credit card debt | 4,450 | ½ Ogee office building debt | 68,000 |
| | | Loan on IRA | 25,000 |
| | | ½ credit card debt | 4,450 |
| Total debt | $215,235 | | $313,235 |
| **Net property & debt** | **$201,588** | | **$190,298** |

This marriage lasted only two and one-half years. Because the marriage was of such short duration, the trial court's goal was to return the parties to their pre-divorce status quo. *Batson v. Batson,* 769 S.W.2d at 859. The trial court awarded Ms. Robertson property valued at $416,823 (45.3% of all the marital property) and directed her to become responsible for $215,235 of the marital debts (40.7% of the total debt). The effect of these decisions was to award Ms. Robertson $201,588 or 51.44% of the parties' net marital estate. We find that this division is essentially equitable in light of the facts of this case.

**II.**

The judgment, as clarified by this opinion, is affirmed, and the case is remanded to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to Tammy Jewell Robertson and her surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE