IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 15, 2019 Session

### HEUN KIM ET AL. v. STATE OF TENNESSEE

**Appeal from the Tennessee Claims Commission**
**No. T20140245       James A. Hamilton, III, Commissioner**
———————————————————

### No. W2018-00762-COA-R3-CV
———————————————————

Plaintiffs/Appellants brought a negligence suit against the State of Tennessee after their six-year old son fell from the fifth floor balcony of the state owned and operated Paris Landing State Park Inn. The Plaintiffs alleged that the State was negligent in two respects: 1) in allowing their son to gain access to an unoccupied guest room and the attached balcony, and 2) in maintaining balcony railings that were shorter in height than was required by applicable building codes. Following a bench trial, the Tennessee Claims Commissioner concluded that the Plaintiffs failed to establish that the State's negligence was the proximate cause of their son's injuries. Because we have determined that the Commissioner's conclusions of law are deficient and only address one of the Plaintiffs' claims for negligence, we vacate the judgment and remand for further consideration.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Tennessee Claims Commission Vacated and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which FRANK G. CLEMENT, P.J., M.S., and WILLIAM B. ACREE, SR. J., joined.

Charles L. Holliday, Jackson, Tennessee, for the appellants, Heun Kim, and Joung Kim.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; Laura Miller, Assistant Attorney General, for the appellee, State of Tennessee.

### OPINION

### Background

The relevant facts in the present case are largely undisputed. Heun Kim ("Mr. Kim") and his wife Joung Kim ("Mrs. Kim" or, collectively, "the Kims") attended a

church retreat at the Paris Landing Park State Inn ("the Inn") over Labor Day weekend of 2012. The Kims' two sons, Aaron and Daniel,[1] were also in attendance, and the family stayed in room 509 of the Inn's "A-wing." On the morning of September 3, 2012, the Kims checked out of their room at approximately 11:30 a.m. but remained on the premises to do various activities with their church group. Meanwhile, Mary Wright ("Ms. Wright"), a housekeeper employed by the Inn, cleaned room 509 around noon.

Later in the afternoon, as the Kims' church group prepared to leave, Daniel became separated from his mother in the midst of the activity. In search of her, Daniel made his way back up the elevator to room 509. Upon reaching the guest room, Daniel found the door to be unlocked and slightly ajar and proceeded into the room. Daniel then gained access to the balcony of room 509. Ultimately, Daniel fell from the fifth floor balcony and sustained significant injuries to his face, head, and one of his legs.

The Kims filed suit against the State of Tennessee ("the State") in the Tennessee Division of Claims Administration on August 21, 2013, and the case was later transferred to the Tennessee Claims Commission ("the Commission"). The Kims alleged that the State had a duty to its guests to control access to unoccupied guest rooms, and, alternatively, that the balcony railing over which Daniel fell was a dangerous condition that was negligently maintained by the Inn. The Kims' theory was that the Inn was negligent in allowing a small child to gain access to an unoccupied guest room, thereby resulting in Daniel's fall. Alternatively, the Kims alleged that the guard rail to the balcony was a dangerous condition, specifically that the railing was "dangerously short . . . and constructed in such a manner that it would encourage a young child to climb onto the railing." *See* Tenn. Code Ann. § 9-8-307(a)(1)(C) & (E).[2] The State answered by

---

[1] Daniel, the child at issue in this case, was six years old at the time of this visit.

[2] This statute in effect at the time of Daniel's injury provided, in relevant part, as follows:

(a)(1) The commission or each commissioner sitting individually has exclusive jurisdiction to determine all monetary claims against the state based on the acts or omissions of "state employees," as defined in § 8-42-101, falling within one (1) or more of the following categories:

* * *

(C) Negligently created or maintained dangerous conditions on state controlled real property. The claimant under this subdivision (a)(1)(C) must establish the foreseeability of the risks and notice given to the proper state officials at a time sufficiently prior to the injury for the state to have taken appropriate measures;

* * *

(E) Negligent care, custody and control of persons; . . . .

Tenn. Code Ann. § 9-8-307(a)(1) (2012).

alleging that the Kims' comparative fault in failing to adequately supervise Daniel precluded the Kims from recovering any damages. Further, the State raised the issue of liability on the part of the contractor who installed the balcony railings in 2004.

Soon after, the State moved for summary judgment, urging that the Kims' negligent care and control claim under section 9-8-307(a)(1)(E) failed as a matter of law because Daniel was never in the care or custody of the State. Second, the State argued that it owed no duty of care to prevent the accident and, alternatively, that the Kims could not establish that any actions on the State's part were the proximate cause of Daniel's injuries. The Claims Commissioner ("the Commissioner") denied the motion in part, determining that the State indeed owed a duty of care to the Kims, and that questions of fact remained regarding proximate cause. As such, the Kims' claim under section 9-8-307(a)(1)(C) survived. The Commissioner did, however, grant summary judgment to the State as to the claims related to section 9-8-307(a)(1)(E) for negligent care, custody, and control of persons. The case proceeded to a three-day trial beginning on February 12, 2018.

The Commissioner heard testimony from several witnesses, including Mr. and Mrs. Kim, Daniel, Ms. Wright, other members of the housekeeping staff, and various staff members of the Inn. The testimony of the witnesses reflected largely the same account of the events of September 3, 2012.

Mr. and Mrs. Kim testified at length about the day of Daniel's fall. It was undisputed that late in the afternoon, around 4:00 p.m., Mrs. Kim lost track of Daniel. Both parents testified that they searched for Daniel for approximately five minutes before a member of the Inn's staff informed them that Daniel had been found outside. Mr. Kim testified that Daniel was hospitalized for nearly a week after his fall, and had to wear a cast on his leg and use a walker for several months afterwards. Further, Mr. Kim testified that he eventually missed so much work due to having to care for Daniel that Mr. Kim had to quit his job. He also stated that Daniel missed a semester of school while in recovery. Mrs. Kim also testified that since the fall, Daniel has largely recovered but that he does have a fear of heights and has expressed some anxiety over the concept of death. Daniel's recollection of his fall was similar to that of his parents, and he testified that when he returned to room 509 after becoming separated from his parents, he found the door to the room slightly ajar. Daniel also admitted that he intentionally climbed on top of the balcony railing because he could not see over it.

The Commissioner heard further testimony from several staff members of the Inn. This testimony reflected that Ms. Wright was the housekeeper who cleaned room 509 on September 3, 2012, and that she did so around noon. There was an unwritten, but undisputed, policy at the Inn that once a room was clean, it must be locked in order to make sure that no one could access the unoccupied room. Moreover, Ms. Wright conceded that she had previously been reprimanded for neglecting to secure a room after

- 3 -

cleaning it. According to Ms. Wright, the policy regarding the locked doors was meant to ensure the safety of the Inn as well as the cleanliness of the rooms. The head housekeeper, Gail Brake ("Ms. Brake") confirmed Ms. Wright's testimony regarding the policy on cleaned rooms. According to Ms. Brake, it was the Inn's policy, as well as general industry standard in all hotels, that a room should always be locked once a guest has checked out and the room has been cleaned. Moreover, Ms. Brake indicated that once a housekeeper has completed cleaning on a floor, the housekeeper is instructed to check every room on that floor to ensure it is locked. Moreover, all members of the housekeeping staff who testified noted that the doors in the A-wing where the Kims stayed were heavy and difficult to close; indeed, several witnesses testified that the A-wing doors would swell on hot days making those doors particularly difficult to secure.

The swelling of the doors in A-wing was also confirmed by the managers of the Inn who testified, as well as the facilities manager. Importantly, every staff member of the Inn that testified confirmed that if a guest had already checked out and returned their room key, and the room had been cleaned by housekeeping, then there would be no way for the guest to then re-access the room unless the door was left unlocked by the housekeeping staff. This testimony was undisputed. Further, the testimony of the Inn staff reflected their understanding that the policy on securing unoccupied rooms was meant to promote the cleanliness of the Inn as well as the safety of the guests. Inn manager Mitzi Hammonds agreed on cross-examination that an unoccupied, unsecured guest room could pose a safety risk because a guest could be attacked or a child could be molested in the room.

The testimony also reflected that the railings of the balcony were not compliant with the applicable building codes. Indeed, the Commissioner heard testimony from Chris Bainbridge, who was the Director of Codes Enforcement for the State during September of 2012. Mr. Bainbridge opined that although the A-wing balcony rails were replaced in 2004, they were not the forty-two inches in height that would have been required by the applicable building code at that time. Rather, the rails that were installed in 2004 were only thirty-six inches in height, six inches shorter than required. Accordingly, there was no dispute at trial that the rails of the A-wing balconies were not compliant with the relevant building codes at the time of Daniel's fall. The State, however, produced evidence that considering Daniel's height and weight at the time of the accident, Daniel would still have had to intentionally climb a thirty-six inch balcony in order to fall over it. Stated differently, regardless of the balcony being six-inches short of complying with the building codes, Daniel would not have been able to fall over it without first climbing on top of it. The evidence regarding Daniel's height, weight, and center of gravity was not disputed.

The Commissioner entered an eighty-nine page written ruling on April 6, 2018. Therein, the Commissioner concluded that the Kims' case should be dismissed because they failed to establish the essential element of proximate cause. Specifically, the

Commissioner determined that "[t]his claim arose because Daniel Kim climbed on top of the balcony railing and fell. Applying the reasonably prudent person standard of care, the occurrence of such an event was simply not foreseeable." The Kims' case was dismissed in its entirety, and a timely notice of appeal to this Court was filed on April 26, 2018.

## Issues Presented

As we perceive it, there is only one issue presented for review in the present case: Whether the Commissioner erred in dismissing the Kims' negligence claim on the basis that the Kims failed to show that the State's negligence was the proximate cause of the Daniel's injuries.

## Standard of Review

The present case was tried before the Claims Commissioner, and appeals from decisions of the Commissioner are governed by the Tennessee Rules of Appellate Procedure. **Bowman v. State**, 206 S.W.3d 467, 472 (Tenn. Ct. App. 2006) (citing Tenn. Code Ann. § 9-8-403). "Accordingly, because the Claims Commission hears cases without a jury, this court reviews the Commissioner's factual findings and legal conclusions using the now familiar standard in Tenn. R. App. P. 13(d)." **Id.** The Commissioner's findings of fact are therefore reviewed de novo with a presumption of correctness, unless the evidence preponderates otherwise. **Id.** (citing **Beare Co. v. State**, 814 S.W.2d 715, 717 (Tenn. 1991); **Dobson v. State**, 23 S.W.3d 324, 328–29 (Tenn. Ct. App. 1999); **Sanders v. State**, 783 S.W.2d 948, 951 (Tenn. Ct. App. 1989)). The legal conclusions of the Commissioner, however, are afforded "no similar presumption of correctness." **Id.** (citing **Turner v. State**, 184 S.W.3d 701 (Tenn. Ct. App. 2005); **Crew One Productions, Inc. v. State**, 149 S.W.3d 89, 92 (Tenn. Ct. App. 2004); **Belcher v. State**, No. E2003-00642-COA-R3-CV, 2003 WL 22794479, at *4 (Tenn. Ct. App. Nov. 25, 2003)).

## Discussion

This is a negligence case, and the Commissioner concluded in his order of dismissal that "this case hinges on the issue of proximate cause." As such, we begin our discussion with a brief overview of well-settled Tennessee negligence law and, particularly, proximate cause.

The following elements are essential to a negligence claim: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." **McCall v. Wilder**, 913 S.W.2d 150, 153 (Tenn. 1995) (citing **Kilpatrick v. Bryant**, 868 S.W.2d 594, 598 (Tenn. 1993); **Bradshaw v. Daniel**, 854 S.W.2d 865, 869 (Tenn. 1993); **McClenahan v. Cooley**, 806 S.W.2d 767, 774 (Tenn.

1991)). A plaintiff must prove both causation in fact and proximate cause by a preponderance of the evidence. ***Kilpatrick***, 868 S.W.2d at 598.

When considering proximate cause, we ask whether the law should "extend responsibility" for negligent conduct "to the consequences that have occurred." ***King v. Anderson Cty.***, 419 S.W.3d 232, 246 (Tenn. 2013) (quoting ***Kilpatrick***, 868 S.W.2d at 598). Indeed, "legal responsibility must be limited to those causes which are so closely connected with the result and are of such significance that the law is justified in imposing liability." ***Id.*** Stated simply, proximate cause "puts a limit on the causal chain" such that even where the defendant's conduct is the cause in fact of the plaintiff's injury, the defendant will not be held responsible "for injuries that were not substantially caused by their conduct or were not reasonably foreseeable results of their conduct." ***Id.*** at 246–47 (citing ***Hale v. Ostrow***, 166 S.W.3d 713, 719 (Tenn. 2005)). Accordingly, our supreme court has acknowledged that "proximate causation is the ultimate issue in negligence cases[,]" and that "proof of negligence without proof of causation is nothing." ***McClenahan***, 806 S.W.2d at 774 (citations omitted); ***King***, 419 S.W.3d at 247.

In assessing proximate cause, we employ a three-pronged test:

1) the tortfeasor's conduct must have been a 'substantial factor' in bringing about the harm being complained of; and 2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and 3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

***Hale***, 166 S.W.3d at 719 (citing ***Haynes v. Hamilton Cty.***, 883 S.W.2d 606, 612 (Tenn. 1994)).

Here, the third element, whether the harm was reasonably foreseeable, is the most pertinent, as the Commissioner determined that Daniel Kim's injuries were not reasonably foreseeable by the State. With regard to the foreseeability prong, this Court has previously stated that

The foreseeability requirement is not so strict as to require the tortfeasor to foresee the exact manner in which the injury takes place, provided it is determined that the tortfeasor could foresee, or through the exercise of reasonable diligence should have foreseen, the general manner in which the injury or loss occurred. The fact that an accident may be freakish does not per se make it unpredictable or unforeseen. It is sufficient that harm in the abstract could reasonably be foreseen.

***Bara v. Clarksville Memorial Hosp. Systems, Inc.***, 104 S.W.3d 1, 12 (Tenn. Ct. App. 2002) (citing ***McClenahan***, 806 S.W.2d at 775); *see also* ***Adams v. Hendersonville Hosp. Corp.***, No. M2006-01068-COA-R3-CV, 2007 WL 1462245, at \*11 (Tenn. Ct. App. May 18, 2007) ("The defendant need not foresee that an injury should occur in the exact way or to the same extent as that which did occur. He need only foresee that some injury of a like general character is not unlikely to result from failure to use care."); ***Spivey v. St. Thomas Hosp.***, 31 Tenn. App. 12, 211 S.W.2d 450, 455–57 (Tenn. Ct. App. 1947) (accidents "almost invariably are surprises, in the sense that the precise manner of their occurrence cannot be foreseen. . . . the particular harm need not have been foreseeable if another harm of a like general character was reasonably foreseeable.").

In the present case, the Commissioner concluded that the injuries sustained by Daniel Kim were not reasonably foreseeable by the State. In doing so, the Commissioner drew the following conclusions of law:[3]

> The burden of proving the elements of negligence, and in particular proximate cause, requires the [Kims] to prove by a preponderance of the evidence Defendant's conduct was a substantial factor in bringing about the harm being complained of and the harm giving rise to the cause of action could have been reasonably foreseen or anticipated by a person of ordinary intelligence and care. The mere possibility an event may occur is not sufficient to prove negligence.
> This case hinges on the issue of proximate cause. More specifically, was the deficiency in the height of the guardrail a substantial factor in Daniel's fall and was it foreseeable a lost child might climb on top of a balcony guardrail in response to the calls of the father who was searching for him.
> The fall sustained by Daniel Kim was not an accidental fall which was the result of a balcony guardrail being only thirty-six inches in height when, in fact, it should have been forty-two inches. The parties themselves stipulated that given Daniel Kim's height and center of gravity as of September 3, 2012, he could not have fallen over a balcony guardrail, even if it was only thirty-six inches in height, without climbing, jumping or otherwise raising himself up at least an additional seven and one-half to nine inches. This claim arose because Daniel Kim climbed on top of the balcony railing and fell. Applying the reasonably prudent person standard of care, the occurrence of such an event was simply not foreseeable.

---

[3] We note that the sole analysis of the proximate cause element contained in the Commissioner's order is contained within its "conclusions of law" section. Although we certainly find no error in this practice, to prevent any confusion upon future readings of this case, we note that "foreseeability, both as to proximate causation and superseding intervening cause . . . is a question of fact rather than of law[.]" ***McClenahan v. Cooley***, 806 S.W.2d 767, 776 (Tenn. 1991).

Based upon the testimony in this case and the applicable law, [the Kims] have failed to prove an essential element of their claim, namely, that the Defendant's negligence was the proximate cause of the minor's fall. Due to the [Kims'] failure to meet their burden of proof this claim should be DISMISSED in its entirety.

As such, the parties dispute on appeal whether Daniel's fall from the balcony was reasonably foreseeable.

The Kims' argument on appeal is two-fold. First, the Kims argue that the Commissioner erred in determining that proximate cause was not established because the Commissioner analyzed the issue through too narrow a lens. Specifically, the Kims assert that they were not required to establish that the specific harm of falling from a balcony was reasonably foreseeable; rather, the Kims urge that their burden was merely to show that harm to a child "in the abstract" was foreseeable where an Inn staff member left a fifth floor guest room unsecured. Additionally, the Kims argue that the Commissioner did not fully consider the Kims' claims, pointing out that the Commissioner made no conclusions of law as to the allegation that the Inn's failure to secure its guest room door was a proximate cause of Daniel's injuries. Indeed, the Kims state in their appellate brief that

> The Commission found that the claim arose for two reasons, one of which was that Daniel gained entry into a room and then the balcony due to a housekeeper's failure to ensure that a door to a guest room was securely closed. The Commission also found that the failure to make sure that the door to a vacant room was securely closed was a violation on the Inn's policy. . . . Despite recognizing that the violation of an industry-wide safety standard was a cause in fact of Daniel's injuries, the Commission did not make any explicit findings of fact regarding whether the State's negligence on this point was a proximate cause of Daniel's injuries. Instead, the Commission limited its discussion to whether the balcony railing was a proximate cause of the injury. . . . [T]he State's negligence in failing to secure the door to a vacant room at an inn frequented by families with young children was a proximate cause of Daniel's injuries. In fact, it was the principal act of negligence that allowed Daniel to access the balcony and be injured, regardless of whether or not the balcony railing was a proximate cause of his injuries[.]

(Record citations omitted).

The Kims essentially assert that at trial they advanced two theories of negligence: (1) that the Inn negligently left an unoccupied guest room unsecured, allowing Daniel to gain access to the room and its balcony; and (2) that the Inn was negligent in maintaining

its balcony railings in that the rails were not compliant with the relevant building codes. On appeal, the Kims take issue with the Commissioner's failure to address the former claim, and assert that the Commissioner considered only the height of the balcony railing in concluding that the Kims did not establish proximate cause. The Kims urge that the Inn's failure to secure the door to room 509 was the State's "principle act of negligence" and that the Commissioner failed to draw any conclusions of law based on the proof offered as to that allegation, despite having heard substantial testimony about the unlocked door at trial. As such, the Kims posit that the decision should be vacated and remanded for consideration of that claim. Having thoroughly reviewed the record and applicable law, we agree.

Tennessee's rules and regulations governing the Claims Commission provide that "proceedings before the Tennessee Claims Commission shall be conducted pursuant to the Tennessee Rules of Civil Procedure" except where specifically modified by rule or regulation. Tenn. Comp. R. & Regs. 0310-01-01-.01 (2019). Rule 52.01 of the Tennessee Rules of Civil Procedure provides, in relevant part, that "[i]n all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." Rule and Regulation 0310-01-01-.01(14) specifically provides that "Rule 52.01 is followed" with the following modification: "**FINDINGS REQUIRED:** As per T.C.A. §9-8-403(a)(1),[4] the Commissioners shall provide findings of facts and conclusions of law on the disposition of all claims." Thus, applicable law makes clear that Commissioners are required to provide findings of fact and conclusions of law in all cases tried before them.

Here, although the Commissioner made detailed findings of fact, the conclusions of law are rather sparse and appear to leave completely unaddressed the claim that the Inn was negligent in allowing Daniel to access an unoccupied fifth floor guest room with a balcony. As the Kims point out in their appellate brief, the act of leaving the door to room 509 unsecured is what the Kims have alleged to be the "principle act of negligence" from

---

[4] Tenn. Code Ann. § 9-8-403(a)(1) provides that:

A court reporter shall be utilized at all hearings on claims on the regular docket and a record of such proceedings shall be made. These proceedings shall be conducted pursuant to the Tennessee Rules of Civil Procedure where applicable and otherwise pursuant to rules and regulations promulgated by the commission. The decisions of the individual commissioners may be appealed to the entire claims commission pursuant to rules promulgated by the commission. The decisions of the individual commissioners or, when rendered, decisions of the entire commission regarding claims on the regular docket may be appealed to the Tennessee court of appeals pursuant to the same rules of appellate procedure which govern interlocutory appeals and appeals from final judgments in trial court civil actions, except that tax appeals shall go directly to the Tennessee supreme court and workers' compensation appeals shall be appealed pursuant to the procedure for other workers' compensation cases under § 50-6-225[.]

the outset of this lawsuit. Further, the Commissioner heard a substantial amount of testimony at trial regarding the doors to A-wing guest rooms, the Inn's policy on securing its guest rooms, and the safety considerations underpinning that policy. Accordingly, the Inn staff leaving room 509 unsecured was an integral part of this case and essential to the Kims' negligence claim. There can be no dispute that the Kims properly raised this argument in the Claims Commission.

The State asks us to overlook this omission in the Commissioner's order by arguing that denial of this claim was "fairly implied" by the written order. Here, the Commissioner's findings of fact contain no express findings as to this issue nor is this issue even alluded to in this section of the order. It is well-settled that the trial court "speaks through its written orders." ***Williams v. City of Burns***, 465 S.W.3d 96, 119 (Tenn. 2015). Given that the Commissioner is likewise required to issue written orders containing findings of fact and conclusions of law, *see* Tenn. Comp. R. & Regs. 0310-01-01-.01(14), we find this rule no less apt in the present case. We note, however, that "when construing orders and judgments, effect must be given to that which is clearly implied, as well as to that which is expressly stated." ***Morgan Keegan & Co. v. Smythe***, 401 S.W.3d 595, 608 (Tenn. 2013) (analyzing the issue of whether a trial court denied a request to compel arbitration, rather than the question of whether the trial court made sufficient findings of fact and conclusions of law). On the other hand, however, this Court has been directed by the Tennessee Supreme Court not to relieve trial courts of the "high judicial function" required of judicial decision-making by conducting "archeological digs" of the record in an effort to support a trial court's decision. ***Smith v. UHS of Lakeside, Inc.***, 439 S.W.3d 303, 312 (Tenn. 2014) (quoting ***Nashville, Chattanooga & St. Louis Ry. Co. v. Price***, 125 Tenn. 646, 649, 148 S.W. 219, 220 (Tenn. 1911)) (involving summary judgment). Thus, an order meets the requirements of Rule 52.01 only when the order "'disclose[s] to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue.'" ***Lovlace v. Copley***, 418 S.W.3d 1, 35 (Tenn. 2013) (quoting 9C *Federal Practice and Procedure* § 2579, at 328).

Here, the Commissioner's order contains neither express nor implied conclusions of law regarding a central argument that was properly raised in this case. Although the State fervently argues that the order is sufficient because the Commissioner ultimately concludes that Daniel's fall was not reasonably foreseeable, the order simply does not "disclose . . . the steps by which the trial court reached its ultimate conclusion" with regard to the Inn's failure to lock the hotel room door. ***Id.*** at 35 (quoting 9C *Federal Practice and Procedure* § 2579, at 328). As such, the order at issue does not comply with the mandates of Rule 52.01. Moreover, we believe that the Kims are entitled to full consideration of this claim by the Commissioner in the first instance. *Cf.* ***Whalum v. Shelby Cty. Election Comm'n***, No. W2013-02076-COA-R3-CV, 2014 WL 4919601, at *3 (Tenn. Ct. App. Sept. 30, 2014) (citing ***Reid v. Reid***, 388 S.W.3d 292, 294 (Tenn. Ct. App. 2012) ("The jurisdiction of this Court is appellate only; we cannot hear proof and

decide the merits of the parties' allegations in the first instance.")) ("[W]e are constrained to only review those issues that have been decided by the trial court in the first instance."). As such, we decline the State's invitation to engage in speculation regarding what the Commissioner intended to conclude in the absence of specific findings directed to this particular claim. Because the Commissioner's conclusions of law fail to address the Kims' central argument regarding their theory of the State's negligence, we conclude that the Commissioner's order of dismissal should be vacated and remanded for reconsideration in light of this opinion.

## Conclusion

The order of the Claims Commissioner dismissing this case is vacated and this cause remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed against the State, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE